Stephen PAYNE, et al., Plaintiffs,

v.

The GOODYEAR TIRE & RUBBER CO., Defendant.

No. C.A. 01–10118–NG.

United States District Court, D. Massachusetts.

June 2, 2003.

Kevin T. Peters, Todd & Weld, Boston, MA, for Plaintiffs.

Richard L. Edwards, Michelle I. Schaffer, Campbell, Campbell, Edwards & Conroy, PC, Boston, MA, Robert Toland, II, Campbell, Campbell, Edwards & Conroy, Wayne, PA, for Defendant.

### *MEMORANDUM AND ORDER RE: MOTION FOR CLASS CERTIFICATION*

GERTNER, District Judge.

## I. *INTRODUCTION*

Plaintiffs bring this lawsuit on behalf of owners of homes in New England heated by radiant floor heating systems created and marketed by a now-defunct company called Heatway that include defendant Goodyear's "Entran II" rubber hose. The complaint alleges that the hose is defective as designed—resulting in oxidation, hardening, cracks, and eventually leaks that cause property damage—and that Goodyear failed to adequately warn customers of known risks associated with its use.

The named plaintiffs have moved for certification of a plaintiff class consisting of:

> all persons, corporations, trusts, associations, partnerships, and/or entities who presently own, or have owned, real property or improvements located in Massachusetts, New Hampshire, Maine, Vermont, Connecticut, and Rhode Island, in which hose known as "Entran II," manufactured and sold by Defendant Goodyear Tire & Rubber Company ("Goodyear"), was or is used as a conduit for fluid for hydronic heating.

While Goodyear formally contests each and every one of the Fed.R.Civ.P. 23 criteria for class certification, the parties' essential dispute over this motion boils down to an assessment of whether differences in governing law among the New England states and/or individualized issues of causation and damages make a class action unworkable and inappropriate. Based on the limited record at this point in the litigation, however, Goodyear's arguments appear to be little more than hypothetical "straw men." Notably, moreover, courts already have certified single state-class actions on the same facts in Colorado and New Mexico. As explained

more fully below, the Plaintiffs' Motion for Class Certification [document # 65] is therefore **ALLOWED** provisionally pursuant to Fed.R.Civ.P. 23(c)(1).

## II. FACTUAL ALLEGATIONS

 A decision on class certification does not involve an examination of the merits of the underlying dispute, but rather serves the limited purpose of determining whether a class action is the most appropriate mode of adjudication. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). For purposes of this motion, the plaintiffs' allegations are therefore treated as true.

In 1989, Goodyear and Heatway consummated a joint venture in which Goodyear would design and produce specialized rubber hose (which it called "Entran II") for use in Heatway's radiant floor heating systems.[1] Heatway specifically required "top quality hose" which would "last indefinitely," would resist hydrocarbons and other chemicals, would be pressure rated to 100 to 200 PSI continuous service, and would be able to resist temperatures up to 300 degrees Fahrenheit and continuous service at 200 degrees Fahrenheit.

Despite a commitment to Heatway that it would fashion a custom product to those specifications, Goodyear elected to use an "off the shelf" rubber tubing for the interior liner of Entran II which previously had been used in truck water heater hoses. Internal memoranda reflect that some Goodyear employees expressed concern whether the hose selected could withstand years of exposure to heat and oxygen. Nevertheless, Goodyear began producing Entran II for Heatway at significant profit; for every dollar of Entran II hose that Heatway sold, it paid Goodyear 60 cents. Despite internal concerns and lack of test data, Goodyear assured Heatway that its product had been tested and was suitable for use in radiant heating systems.

Several years later, Heatway began receiving customer complaints about leaks. When Goodyear refused to support Heatway's inquiry into the problem, Heatway retained Dr. C.M. Roland, a chemist at the Naval Research Laboratory in Washington, D.C., who has to date performed more than 600 hours of tests on Entran II hose. Among other things, he found that wall thickness began to degrade at every tested temperature after just 9 weeks and that hardening occurred under a variety of conditions. He also concluded that these effects were predictable and known by Goodyear at the time it designed Entran II, and that a variety of superior materials were available that Goodyear could have used. Goodyear's own early test results support Dr. Roland's findings.

After refusing to cooperate with Heatway in addressing leak complaints, Goodyear sued Heatway over a trade debt relating to nonpayment for shipments of new-generation Entran III hose. Heatway counterclaimed that Goodyear sold Entran II hose in a nonmerchantable condition. Goodyear successfully defended, asserting that any problems with the hose resulted from improper design, installation, operation, and/or maintenance. Goodyear also waged a public campaign, posting on its website a "protocol" for "proper" installation, operation, and maintenance of Entran II heating systems, and blaming Heatway for failing to alert customers to that information. Heatway eventually filed for bankruptcy protection.

Subsequent expert analysis has shown that even in what Goodyear purports to be an "ideal" environment, the hose fails. In contrast, other types of hose in radiant heating systems throughout the country have not exhibited Entran II-type defects. Goodyear provided no warnings of these problems and concealed its knowledge of defects. Plaintiffs allege that leaking Entran II systems have caused property damage and that the mere fact of having an Entran II system in a house tends to diminish the market value of the property and make it less attractive to prospective buyers.

## III. LEGAL ANALYSIS

 In order prevail on a motion for class certification, plaintiffs must show that the

---

1. In such systems, heated fluid is circulated through hose affixed underneath or embedded within the floor.

case meets all four requirements of Fed. R.Civ.P. 23(a) and fits into one of the categories enumerated in Fed.R.Civ.P. 23(b). *See Mack v. Suffolk County*, 191 F.R.D. 16, 22 (D.Mass.2000) (Gertner, J.). Doubts should be resolved in favor of certification, particularly in early stages of the litigation. *See Esplin v. Hirschi*, 402 F.2d 94, 99 (10th Cir.1968) ("if there is to be an error made, let it be in favor and not against maintenance of the class action, for it is always subject to modification should later developments during the course of the trial so require").

### A. Rule 23(a) Threshold Criteria

To meet the threshold requirements of Rule 23(a), plaintiffs must establish that the proposed class has the following qualities:

(1) numerosity (a class so large that "joinder of all members is impracticable");

(2) commonality ("question of law or fact common to the class");

(3) typicality (named parties' claims or defenses "are typical ... of the class"); and

(4) adequacy of representation (representatives will "fairly and adequately protect the interests of the class").

*Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 613, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). I will examine each of these factors in turn.

### 1. Numerosity

■ The numerosity requirement hinges on the impracticability of joining all class members in the action. *See Mack*, 191 F.R.D. at 22. Based on sales of five million feet of Entran II hose in New England and Heatway's benchmark that a "typical" home installation uses 2,500 linear feet of hose, plaintiffs estimate that approximately 2,000 New England homeowners have had Entran II installed as part of a radiant heating system. This would obviously satisfy the numerosity threshold.

■ Goodyear objects that the specter of 2000 class members is unfounded because, for example, some of the hose sold in New England may have been shipped across the country. While this could theoretically be true, a court may infer numerosity where underlying facts so warrant. *See In re New England Mut. Life Ins. Co. Sales Practices Litig.*, 183 F.R.D. 33, 39 (D.Mass.1998). Courts ordinarily are "quite willing to accept common assumptions in order to support a finding of numerosity." *Grace v. Perception Tech. Corp.*, 128 F.R.D. 165, 167 (D.Mass. 1989) (internal citation omitted). Here, it seems more than plausible to infer that at least some not insignificant portion of hose sold in New England—and perhaps some quantity of hose sold elsewhere—wound up in the floors of New England homes. Moreover, plaintiffs also represent that more than 200 New England homeowners already have contacted counsel about prospective claims. I therefore conclude that plaintiffs have satisfied the numerosity requirement.

### 2. Commonality

■ The "commonality" requirement is satisfied if "common questions of law or fact exist" and "class members' claims are not in conflict with one another." *Mack*, 191 F.R.D. at 23. It "does not require that class members' claims be identical." *Id.* A *single* common legal or factual issue can suffice. *See Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 625 (5th Cir.1999). Thus, the commonality requirement ordinarily is easily met. *See Duhaime v. John Hancock Mut. Life Ins. Co.*, 177 F.R.D. 54, 63 (D.Mass.1997)(describing commonality as a "low hurdle").

The plaintiffs here allege a common nucleus of facts and legal basis for their claims: Goodyear's hose was defective and the company failed to warn customers of known problems. There does not appear to be any inherent conflict among class members' claims.[2]

---

**2.** Goodyear argues that issues of individual causation lack commonality, but that is really an attack on the "predominance" prong under Rule 23(b)(3) and does not deny the mere existence of some common questions of fact and law in the case as framed by the plaintiffs in their complaint.

### 3. *Typicality*

The "typicality" requirement goes hand in hand with "commonality" and is focused on the congruence between particular claims of the named class representatives and the generalized claims that are common to the class. *See Mack*, 191 F.R.D. at 23. "The typicality requirement is not highly demanding" because "the claims only need to share the same essential characteristics, and need not be identical." 5 *Moore's Federal Practice* § 23.24[4]. Here, the allegations of the individual named plaintiffs closely track the broadly framed claims of the class. All of the plaintiffs have Entran II systems installed in their homes which allegedly have failed because of the defective Goodyear product.

Goodyear argues that the named plaintiffs' claims, which involve interior home heating applications, are not typical of consumers who have Entran II hose for snow-melting applications—*e.g.*, exterior installations in driveways, sidewalks, and roofs.[3] At this point, however, I can only speculate whether this difference in application would make the class representatives' claims "atypical." Plaintiffs respond, quite plausibly, that they will prove that the product is defective in any radiant heating application and that the remedy in all cases is the same: reimbursement for removal/replacement and compensation for any damage caused. Even if it later turns out that there are material differences between named plaintiffs' claims and those of property owners with snow-melt systems, this can be remedied either by narrowing the class definition or by adding additional named plaintiff(s) as class representatives.

### 4. *Adequacy of Representation*

The "adequacy of representation" element "requires that Plaintiff demonstrate that her interests will not conflict with those of the class members and that her counsel is qualified, experienced, and able to vigorously conduct the proposed litigation." *Mack*, 191 F.R.D. at 23 (citing *Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 130 (1st Cir.1985)).

It follows from my findings on commonality and typicality that there are no apparent conflicts of interest among the class members in this case. Indeed, all of them have an identical interest in proving that Goodyear's hose is defective. Furthermore, plaintiffs' counsel are well-qualified attorneys with experience in class actions generally and with knowledge of specific facts underlying this case particularly, having litigated Entran II class actions against Goodyear in Colorado and New Mexico. Accordingly, I find that the named plaintiffs and their counsel have shown that they will adequately and fairly protect the interests of the class.

### B. *Rule 23(b) Requirements*

Plaintiffs specifically seek to certify the class under Rule 23(b)(3), which requires that 1) "questions of law or fact common to the members of the class predominate over any questions affecting only individual members" and that 2) "a class action is superior to other available means for the fair and efficient adjudication of the controversy." Notably, "Rule 23(b)(3) is intended to be a less stringent requirement than Rule 23(b)(1) or (b)(2)," and is designed for the specific purpose of enabling consumers to pursue, *inter alia*, defective product claims. *Smilow v. Southwestern Bell Mobile Systems, Inc.*, 323 F.3d 32, 41 (1st Cir.2003).

### 1. *Predominance of Common Questions*

While the "predominance" element is "far more demanding" than the "commonality" test of Rule 23(a), it does not require uniformity of claims across the entire class. *Amchem*, 521 U.S. at 623–25, 117 S.Ct. 2231. As Newberg observes, the rule's requirement that common issues predominate over individual issues presupposes that individual issues will exist. *See* 2 Newberg on Class Actions § 4.25 (2002). There is no rigid test of predominance; rather, it simply requires a finding that "a sufficient constellation of issues binds class members together." *Waste Mgmt. Holdings, Inc. v. Mowbray*,

---

**3.** Goodyear frames this argument as an objection to "adequacy of representation," but it more

logically fits under the "typicality" rubric.

208 F.3d 288, 296 (1st Cir.2000). A "single, central issue" as to the defendant's conduct vis a vis class members can satisfy the predominance requirement even when other elements of the claim require individualized proof. *In re Prudential Ins. Co. of Am. Sales Practices,* 148 F.3d 283, 314 (3d Cir. 1998) (certifying 23(b)(3) class in fraud lawsuit notwithstanding need for individual proof of reliance).

Plaintiffs argue here that the core of their case will turn on common proof of Goodyear's action and inaction with respect to the entire class: whether the hose was defective, whether Goodyear breached implied warranties, whether Goodyear should have foreseen the problems, and whether Goodyear engaged in deceptive trade practices. Plaintiffs expect that the lion's share of litigation resources are likely to be invested in competing expert testimony on the issue of defect.

Goodyear nevertheless focuses its class certification attack on this "predominance" prong, arguing that individual issues of law and fact will overwhelm common issues and make the class unworkable.

### a. Possible Conflicts of Law

Goodyear argues generally that potential conflicts of law among the New England states would interfere with class adjudication. In an appendix to its brief, Goodyear lists a number of legal issues on which it expects conflicts to arise, including:

- the test for determining whether a product is "unreasonably dangerous";
- admissibility of "state of the art" evidence;
- statute of limitations;
- defense of industry practice/regulatory compliance;
- effects of comparative negligence;
- burden of proof on "misuse"
- requirement for plaintiff to prove alternative feasible design"

Goodyear then cites a number of class action cases where conflicts of law were found to "swamp" common issues.

Plaintiffs counter with their own state law compendium and argue that many of Goodyear's purported "conflicts" are distinctions without a difference. For example, if the plaintiffs successfully prove that the hose hardens and cracks under normal or foreseeable conditions, a jury is likely to find it defective whether one formally uses a "risk utility" test or "consumer expectations" test.

Plaintiffs also assert that the defendant bears the burden to prove that conflicts of law predominate over common issues, while acknowledging that the law in this district is split. *Compare Gorsey v. I.M. Simon & Co.,* 121 F.R.D. 135, 140 (D.Mass.1988) (Zobel, J.) (finding burden on plaintiff to perform choice of law analysis for class certification) *with Margaret Hall Found., Inc. v. Atlantic Fin. Mgmt., Inc.,* 1987 WL 15884, at * 6 (D.Mass. 1987) (Skinner, J.) (finding burden on defendant to perform choice of law analysis for class certification).

Under the First Circuit's standard approach to conflicts questions, the notion that defendants bear the burden to show that conflicts would defeat the class makes the most sense. Ordinarily, the court need not even undertake a choice-of-law inquiry unless an actual conflict is demonstrated. *See Millipore Corp. v. Travelers Indem. Corp.,* 115 F.3d 21, 29 (1st Cir.1997) ("The first step in performing a choice of law analysis is to determine whether there is a conflict between the substantive laws of the interested jurisdiction"); *Fashion House, Inc. v. K mart Corp.,* 892 F.2d 1076, 1092 (1st Cir. 1989) (noting that a "court need not formally make a choice of law" if the result is unaffected); *Restatement (Second) of Conflict of Laws* § 136, cmt. f ("Frequently ... the party who claims that the foreign law is different from the local law of the forum has the burden of establishing the content of the foreign law").

If there is a conflict, the forum's (*i.e.,* Massachusetts') choice-of-law rules would govern. *See Millipore,* 115 F.3d at 30. If another jurisdiction's law is found to govern the substantive claims of particular plaintiffs, procedural and evidentiary matters would still be governed by federal law (thus dissolving some of Goodyear's purported "conflicts"). *See Servicios Comerciales Andinos,*

*S.A. v. General Electric Del Caribe, Inc.*, 145 F.3d 463, 479–80 (1st Cir.1998).

On the existing record, I lack any basis to conclude that conflicts of law will present an insurmountable problem, particularly since only six jurisdictions are implicated by this case. To the extent they exist, I expect that they can be handled by, for example, carefully crafted jury instructions and verdict forms, etc.

### b. *Individual Causation and Comparative Fault*

Goodyear also argues that proximate causation and comparative fault must be proven with respect to each class member, which will be unmanageable given varying circumstances of product installation and use which might have caused particular leaks in a particular instance. While Goodyear's argument has some merit in principle, this objection would only implicate one narrow strand of the plaintiffs' theory—that which is predicated on liability for actual property damage caused by leaking Entran II hose. In other words, before a plaintiff could obtain recovery for property damage caused by leaking water, he or she would have to prove individual causation: the water came from the leaky Entran II hose, which leaked because of a defect and not for some other reason (*e.g.*, because a carpenter accidentally drove a nail through it). Presumably, Goodyear also would be entitled to present individualized contributory and/or comparative negligence defenses.[4]

It appears, however, that the plaintiffs' primary theory of the case is rather different and more susceptible to class determination. Plaintiffs allege, and intend to prove by expert testimony, that Goodyear's hose is defective and fails both under ordinary, foreseeable conditions and even "ideal" conditions as defined by Goodyear. Goodyear's defense suggests, also based on expert testimony, that the product is not defective and that it only fails when misused in any num-

ber of ways. The Colorado court's reasoning in rejecting a similar individual causation argument is persuasive:

> This argument ignores the nature of the claims against Goodyear. Plaintiffs claim that the Entran II hose was defective for the purpose for which it was designed and manufactured when it left Goodyear's manufacturing plant. Plaintiffs will by calling the same expert witnesses for each case, attempt to prove that it was this manufacturing defect, combined with foreseeable misuse, which caused the failure. Defendants will, by calling the same expert witnesses for each case, attempt to prove that there was no manufacturing defect and unforeseen misuse caused the failures. There is no reason for this issue to be rehashed twenty-five times, or even seven times. The jury verdict form may be carefully crafted to allow the jury to consider whether the Entran II hose was defective for its proposed use from the start and suffered foreseeable misuse, or instead leaked as a result of unforeseen misuse.

*Loughridge v. Goodyear Tire & Rubber Co.*, C.A. No. 98–B–1302, Slip. Op. at 5 (D.Colo., Dec. 5, 2000).

Moreover, while the parties have not yet fully briefed the issue, plaintiffs suggest that there could be a class-wide determination of liability based on the res judicata effect of a jury verdict against Goodyear in the Colorado case, *Vista Resorts, Inc. v. Goodyear Tire & Rubber Co.*, Dist Ct., Arapahoe County, Colorado, C.A. No. 98–CV–2772. Whatever the merits of this argument, it seems beyond dispute that it would be most appropriate to resolve this type of legal issue with respect to the entire class so as not to risk contradictory decisions in individual plaintiff cases.

### c. *Individual Damages*

 Goodyear also argues that individualized damages determinations would thwart the class. However, the "individuation of

4. Even if it affected a more central strand of the case, the possibility of individual affirmative defense determinations would not necessarily undermine the "predominance" requirement. "Courts traditionally have been reluctant to deny class action status under Rule 23(b)(3) simply because affirmative defenses may be available against individual members." *Smilow*, 323 F.3d at 39 (overturning decertification of class where individual waiver determinations could be necessary).

damages in consumer class actions is rarely determinative ... where, as here, common questions, predominate, then courts generally find the predominance requirement to be satisfied even if individual damages issues remain." *Smilow*, 323 F.3d at 40. Indeed, the same argument could be used to defeat any putative class action. There is no reason to suspect that the parties and the court could not come up with a fair and workable damages formula or claims procedure, with compensation for replacement perhaps tied to the type of Entran II installation (i.e., "embedded" or "tack-up") and the length of hose or square footage of the structure. *See Mack*, 191 F.R.D. at 25.

### d. *Conclusion*

I cannot presently conclude that potential individual determinations would overwhelm the common issues in this case. As the First Circuit has admonished, "[c]lasses ... that are made up of consumers are especially likely to satisfy the predominance requirement." *Smilow*, 323 F.3d at 42 n. 9. "The 'sufficient level of predominance is not high' for class action suits vindicating the rights of consumers who purchased defective products." *Id.* (internal citation omitted). This is precisely that type of lawsuit that Rule 23(b)(3) was designed to accommodate.

### 2. *Superiority of Class Mechanism*

■ The final hurdle that plaintiffs must clear under Rule 23 is the requirement to demonstrate that "a class action is a fair and efficient method of adjudicating the controversy and would be superior to other methods." *Mack*, 191 F.R.D. at 25. The very fact that I have found that the proposed class meets all of the other Rule 23 criteria strongly suggests that a class action is desirable as a matter of judicial economy; joinder is impracticable and common issues predominate.

Even if, as plaintiffs insist, some individual adjudication of causation, damages, or other issues is required, the class action would remain a superior method to adjudicate those questions that are common. The mere fact of a need for individualized inquiries does not automatically preclude certification. *See Mack*, 191 F.R.D. at 25.

■ Moreover, a class action would best serve the underlying purposes of Rule 23(b) by assuring aggrieved consumers their day in court. "The core purpose of Rule 23(b)(3) is to vindicate the claims of consumers and other groups of people whose individual claims would be too small to warrant litigation." *Smilow*, 323 F.3d at 42. While the claims of many class members are not insubstantial—perhaps tens or even hundreds of thousands of dollars—the litigation costs, including extensive scientific expert analysis, of pursuing individual claims against Goodyear would be likely, in many cases, to be prohibitive.

## IV. *CONCLUSION*

On the record presently before me, class certification appears appropriate. If it later turns out that individual issues of law or fact interfere with effective adjudication, the parties can propose any of the procedural devices available—*e.g.*, subclasses, specific jury questions, or even decertification—to address such problems. The plaintiffs' Motion for Class Certification [document # 65] is therefore **ALLOWED** provisionally pursuant to Fed.R.Civ.P. 23(c)(1).

**SO ORDERED.**