**Rochelle MEYER, Roth IRA
Custodian, Plaintiff,**

v.

**PUTNAM INTERNATIONAL VOYAGER FUND n/k/a Putnam International Capital Opportunities Fund, Putnam Europe Equity Fund, Putnam International Growth Fund n/k/a International Equity Fund, Putnam Global Equity Fund, Putnam Investment Management Trust, Putnam Investment Management LLC, Marsh & McLennan Corp., Inc., Omid Kamshad, and Justin M. Scott, Defendants.**

**No. CIV.A. 03–12214–WGY.**

United States District Court, D. Massachusetts.

Jan. 27, 2004.

---

Norman Berman, Berman, DeValerio, Pease, Tabacco, Burt & Pucillo, Boston, MA, for Plaintiff.

John D. Donovan, Jr., Ropes & Gray LLP, Richard D. Batchelder, Jr., Ropes & Gray LLP, Boston, MA, Seth M. Schwartz, Skadden, Arps, Slate, Meagher & Flom LLP, New York City, John A.D. Gilmore, Piper, Rudnick LLP, John Sylvia, Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, PC, Boston, MA, for Defendants.

### ORDER

YOUNG, Chief Judge.

### I. INTRODUCTION

By electronic order dated December 31, 2003, this Court allowed the Plaintiff's Motion to Remand [Doc. No. 9] as unopposed. After receiving the Defendants' Memorandum in Opposition [Doc. No. 14] on January 12, 2004 and reviewing that Memorandum, the Court enters the following order.

### II. BACKGROUND

The plaintiff, Rochelle Meyer ("Meyer"), brought this proposed class action in the Massachusetts Superior Court sitting in and for the County of Suffolk against Putnam Investment Management LLC ("Putnam"); several mutual funds managed by Putnam, Putnam International Voyager Fund n/k/a Putnam International Capital Opportunities Fund, Putnam Europe Growth Fund n/k/a Putnam Europe Equity Fund, Putnam International Growth Fund n/k/a Putnam International Equity Fund, and Putnam Global Equity Fund (collectively the "Funds"); the parent company of Putnam, Marsh & McLennan Companies, Inc.; and two employees of Putnam, Omid Kamshad and Justin Scott (collectively the "Defendants"). Notice of Removal [Doc. No. 1], Ex. A (Complaint) ¶¶ 1–11. Meyer alleges, on behalf of herself and "all holders of [the Funds] between January 3, 2000 and September 16, 2003," that the Defendants breached their fiduciary duty to the proposed class by permitting certain investors and employees to engage in short-term trading (referred to as "timing") of shares in the Funds. Compl. ¶¶ 21, 66. The Defendants removed the action, citing provisions of the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"), 15 U.S.C. § 78bb(f)(1), and the general removal statute, 28 U.S.C. § 1441. Notice of Removal at 2. Meyer here moves to remand. [Doc. No. 9].

### III. DISCUSSION

The Defendants assert that removal was proper under (a) SLUSA, and (b) the general removal statute. After weighing the parties' submissions against the removing Defendants' burden of "showing the federal court's jurisdiction," *Danca v. Private Health Care Systems, Inc.*, 185 F.3d 1, 4 (1st Cir.1999), the Court reaches the following conclusions.

### A. SLUSA

■ The Defendants have not established the requirements for removal under SLUSA. Specifically, the Defendants have not shown that Meyer's claim arises "in connection with the purchase or sale" of shares of the Funds.[1] 15 U.S.C. § 78bb(f)(1); *Riley v.*

---

1. Because the Court concludes that the Defendants have not met the "purchase or sale" requirement, it finds it unnecessary to address in detail Meyer's assertion that the Defendants have also failed to establish claims of "misrepresentation or omission." *See* Pl.'s Reply at 3. The Court notes only that portions of Meyer's Complaint, describing "unsuspecting" class members (¶ 17) and Putnam's stated but unequally enforced "policy" against market timing (¶¶ 43, 45), might be fairly construed as the "allegations of misrepresentations or omissions" that Meyer

*Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 292 F.3d 1334, 1342 (11th Cir.2002). The Defendants assert that this requirement is "plainly—and easily" satisfied by "transactions between the funds and market timers." Defs.' Opp'n at 10–11. The cases cited in support of this assertion, however, involve derivative claims brought on behalf of a corporation or trust. *See Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 738, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975) (noting that shareholders are frequently able to circumvent the purchase or sale requirement by "bringing a derivative action on behalf of the corporate issuer if the latter is itself a purchaser or seller of securities"); *Kirshner v. United States,* 603 F.2d 234, 240–41 (2d Cir. 1978) ("We think the beneficiary of a pension trust, like the shareholder in a derivative suit, has standing to attack securities frauds perpetrated or threatened by the trustees of his fund."), *abrogated on other grounds, Finkel v. Stratton Corp.,* 962 F.2d 169 (2d Cir.1992). Such derivative claims, even if effectively asserted here, are explicitly excluded from SLUSA's preemptive scope. See 15 U.S.C. § 78bb(f)(5)(C) (establishing that "the term 'covered class action' [which describes actions subject to SLUSA removal] does not include an exclusively derivative action brought by one or more shareholders on behalf of a corporation").

Nor have the Defendants established the required "purchase or sale" by asserting that the "vague class of 'holders'" includes "persons who purchased and/or sold shares of the Funds during the putative class period." Def.'s Opp'n at 13–14. While this assertion raises a closer question, the Court concludes that the language of Meyer's complaint is sufficiently clear to exclude claims asserted in connection with the purchase or sale of the Funds. In contrast to cases cited by the Defendants, Meyer limits the proposed class definition to "holders of the [Funds]." Compl. ¶¶ 13, 66. *Compare Cape Ann Investors LLC v. Lepone,* 296 F.Supp.2d 4, 11–12 (D.Mass.2003) (Stearns, J.) (shareholders who "purchased … as well as those … who were induced to maintain their investment"); *Coy v. Arthur Anderson,* No. 01–4248, at 16 denies making. Pl.'s Reply at 3; *see also* Notice

(S.D.Tex. Feb. 6, 2002) (shareholders "who own, or owned"); *Hardy v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 189 F.Supp.2d 14, 18 (S.D.N.Y.2001) (customers who "purchased"). The Court acknowledges that notwithstanding her use of the term "holders," Meyer's class definition might, when considered in isolation, be construed to include plaintiffs with "claims based on the purchase or sale of securities." *See* Defs.' Opp'n at 12. Yet when considered in context—including the relevant case law, which clearly distinguishes between the claims of purchasers and sellers on the one hand and those of holders on the other, the remainder of Meyer's complaint, which does not allege purchase or sale or seek relief on these bases, and Meyer's Memorandum, which explicitly disavows any allegation "that plaintiff bought or sold covered securities in reliance on defendants' alleged misrepresentations," Pl.'s Mem. at 6—Meyer's proposed class is better construed to exclude those asserting claims "in connection with the purchase or sale" of shares of the Funds. *See Gutierrez v. Deloitte & Touche, L.L.P.,* 147 F.Supp.2d 584, 594 (W.D.Tex.2001) (rejecting a "narrow reading" of the class definition given the plaintiffs' "characterization of the first amended petition, and the fact they do not expressly state a cause of action for misrepresentation made to purchasers"). Accordingly the terms of SLUSA's preemption provision, even if broadly read, *see* Def.'s Mem. at 8, do not extend to Meyer's claims as construed by this Court.

### B. 28 U.S.C. § 1441

■ The Court is also unpersuaded by the Defendants' alternative argument that Meyer's claim, although sounding in state law, "turns on the interpretation of federal law" and thus was properly removed under 28 U.S.C. § 1441. Defs.' Opp'n at 2. When the Defendants' invocation of "federal ingredient jurisdiction" is considered with the "caution" advised by the First Circuit, the federal questions cited—including the federally created duties of investment advisors to update the prices of mutual fund shares and act in the best interests of shareholders, Defs.' of Removal at 3.

Opp'n at 4–6—do not appear sufficiently substantial.

First, and most significantly, the Defendants do not allege that the federal schemes governing the pricing of mutual funds and the actions of investment advisors create a federal cause of action. Defs.' Opp'n at 6 (describing Meyer's "tort claim" not as arising under federal law, but rather "rel[ying] on federal law for an essential element"). Indeed, the Court concluded above that Meyer's claims do not present the "purchase or sale" necessary to a federal cause of action for securities fraud, and therefore fall outside the scope of SLUSA preemption. *See supra* section II.A. Accordingly, consistent with First Circuit precedent, the Court "presume[s] that Congress did not intend the statute to confer federal jurisdiction." *PCS 2000 LP v. Romulus Telecomms., Inc.,* 148 F.3d 32, 34 (1st Cir.1998). Second, the Defendants have not established that Meyer's claims fall within the "discrete type of case where federal subject matter jurisdiction will lie notwithstanding the absence of a federal cause of action." *Templeton Bd. of Sewer Comm'rs v. American Tissue Mills of Mass., Inc.,* 352 F.3d 33, 39 (1st Cir.2003) (interpreting *Almond v. Capital Properties, Inc.,* 212 F.3d 20 (1st Cir.2000)). Although the Defendants' federally created duties may be implicated, their breach does not give rise to a federal cause of action, but merely establishes an "element of the state tort." *Merrell Dow Pharms. Inc. v. Thompson,* 478 U.S. 804, 814, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986) (finding removal improper where the plaintiffs' claims asserted that an alleged violation of the Food, Drug, and Cosmetic Act constituted a presumption of negligence). As stated by the Supreme Court: "Given the significance of the assumed congressional determination to preclude federal private remedies, the presence of the federal issue as an element of the state tort is not·the kind of adjudication for which jurisdiction would serve congressional purposes and the federal system." *Id.; see also Moore v. Chesapeake & O. Ry.,* 291 U.S. 205, 214–15, 54 S.Ct. 402, 78 L.Ed. 755 (1934) ("But it does not follow that a suit brought under the state statute which ... brings within the purview of the statute a breach of the duty imposed by the federal statute, should be regarded as a suit arising under the laws of the United States and cognizable in the federal court in the absence of diversity of citizenship."). For these reasons, the Court finds the federal questions cited by the Defendants insufficiently substantial to support an exercise of federal jurisdiction.

## IV. CONCLUSION

Meyer's claim, as construed by this Court, falls outside the scope of federal removal jurisdiction. Accordingly, Meyer's Motion to Remand [Doc. No. 9] is ALLOWED.

SO ORDERED.