SOUTHERN STATES POLICE BE-
NEVOLENT ASSOCIATION,
INC. et al., Plaintiff,

v.

FIRST CHOICE ARMOR & EQUIP-
MENT, INC., Karen Herman, Ed-
ward R. Dovner, Defendants.

Civil Action No. 06–10034–NMG.

United States District Court,
D. Massachusetts.

March 9, 2007.

David M. Cohen, W. Pitts Carr, Carr, Tabb & Pope LLP Atlanta, GA, Elaine N. Silveira, Herschel M. Sigall, Columbus, OH, Michael S. Appel, Sugarman, Rogers, Barshak & Cohen, P.C., Boston, MA, for Plaintiff.

David M. O'Connor, O'Connor & Associates, LLC, Boston, MA, for Defendants.

## MEMORANDUM & ORDER

GORTON, District Judge.

The underlying case involves allegations that the defendants sold defective, bullet-resistant body armor construction to numerous police departments around the country. Currently pending before the Court is a motion of plaintiffs for class certification.

### I. *Background*

First Choice Armor & Equipment, Inc. ("First Choice") is a manufacturer of bullet-resistant body armor. Between 2000 and August, 2005, First Choice sold various kinds of vests which contained a protective, light-weight fiber known as Zylon®. In August, 2005, National Institute of Justice (a division of the United States Department of Justice)("NIJ"), released test results on Zylon® vests and decertified First Choice Zylon® vests. The NIJ issued an advisory notice stating that Zylon® is a "material that appears to create a risk of death or serious injury as a result of degraded ballistic performance when used in body armor."

In September, 2005, First Choice initiated a Voluntary Replacement Program which allowed participants to pay for replacement vests. Plaintiffs contend that this process has been a "sham and utter failure" and an "anemic effort" which has resulted in a return of only a fraction of the vests.

On January 5, 2006, plaintiffs, the Southern States Police Benevolent Ass'n, Inc. ("the Southern States"), Ohio state troopers Dennis Wilcox and George King and the Lowell, Massachusetts Police Department (collectively, "the Named Plaintiffs"), filed a class action complaint against defendants First Choice, its president, Karen Herman ("Herman"), and a principal director, Edward Dovner ("Dovner"). Plaintiffs allege that defendants have known 1) since 2001 that vests containing Zylon® are subject to breakdown when exposed to heat and humidity, 2) since 2003 that police officers have been critically wounded or killed as a result of penetrations of Zylon® vests produced by other manufacturers, 3) since 2004 other manufacturers of bulletproof vests were recalling thousands of Zylon® vests on account of performance failures and 4) since 2005 that the United States Department of Justice had commenced a lawsuit against defendants' supplier, Toyobo Company, Ltd. and Toyobo America, Inc., relating to deficiencies of Zylon®. The complaint states six claims for relief: four claims of breach of express and implied warranties, one claim of unfair and deceptive trade practices and one claim for injunctive relief.

The plaintiffs filed an "emergency" motion for injunctive relief on February 23, 2006, seeking an order from the Court compelling the defendants to provide a safety warning and to cease informing potential class members that the vests were safe and free from defects. The Court found that a limited notice advising customers of the deficiencies of Zylon® and the voluntary replacement campaign was necessary and required but denied the plaintiffs' motion for injunctive relief because the class had not yet been certified.

On October 16, 2006, the plaintiffs filed a motion for class certification (Docket No. 50). At a hearing held on December 28, 2006, the parties presented arguments for and against the proposed certification and the Court took the matter under advisement.

Plaintiffs move the Court to certify the following persons and entities as a class ("the Class"):

All law enforcement personnel, organizations and other individuals and entities in Arizona, California, Colorado, Connecticut, the District of Columbia, Georgia, Florida, Louisiana, Massachusetts, Maryland, Michigan, Missouri, Minnesota, New Hampshire, New Jersey, New Mexico, New York, Ohio, Oregon, Pennsylvania, Rhode Island, Texas and Washington (states hereinafter referred to by their common, zip-code abbreviations) who purchased vests containing Zylon®, including K–9 vests, from defendant First Choice between January 3, 2000 and January 3, 2006. The Class excludes the defendants, First Choice affiliates, parents and subsidiaries, all directors, officials, agents and employees of First Choice, First Choice distributors, federal agencies and any persons who have been physically injured as a result of the defects in the vests.

Furthermore, with respect to Count V of the complaint alleging unfair and deceptive trade practices, the plaintiffs move the Court to certify the following subclass ("Subclass A"):

All law enforcement personnel, organizations and other individuals and entities in AZ, CA, CO, FL, MA, NY, TX and WA who purchased vests containing Zylon®, including K–9 vests, from First Choice between January 3, 2000 and January 3, 2006. The subclass also excludes the defendants, First Choice affiliates, parents and subsidiaries, all directors, officials, agents and employees of First Choice, First Choice distributors, federal agencies and any persons who have been physically injured as a result of the defects in the vests.

Alternatively, if the Court declines to certify Subclass A, Plaintiffs ask the Court to certify a more limited subclass ("Subclass B") pursuant to Mass.Gen.Laws ch. 93A:

All law enforcement personnel, organizations and other individuals and entities in the Commonwealth of Massachusetts who purchased vests containing Zylon®, including K–9 vests, from First Choice between January 3, 2000 and January 3, 2006. The same exclusions to the Class apply as described above.

Accompanying the request for class certification, the Plaintiffs move the Court to appoint the Named Plaintiffs as representatives of the Class, appoint the Named Plaintiffs' counsel as counsel for the Class, appoint W. Pitts Carr and David M. Cohen as lead class counsel, require the issuance of appropriate notice to the class and order such other and further necessary relief.

Defendants vigorously oppose the motion for class certification, arguing that the plaintiffs have failed to meet various requirements for certification under Fed.R.Civ.P. 23.

## II. Motion for Class Certification

In order for the Court to certify the proposed class, the plaintiffs must fulfill the requirements of Fed.R.Civ.P. 23(a): numerosity, commonality, typicality and adequacy of representation, and also one of the three prerequisites set forth in Fed.R.Civ.P. 23(b). See Smilow v. Southwestern Bell Mobile Systems, Inc., 323 F.3d 32, 38 (1st Cir.2003)(citing Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 614, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997)).

### A. Fed.R.Civ.P. 23(a) Requirements

In order to meet the numerosity requirement, the plaintiffs must demonstrate that the putative class is "so numerous that joinder of all members is impracticable". Fed. R.Civ.P. 23(a)(1). Citing the defendants' production of spreadsheets which demonstrate sales of over 14,000 Zylon® vests to such class members, the plaintiffs contend that their sheer number satisfies the numerosity threshold because joinder of a group this size would be impracticable. Neither the defendants nor the Court disagrees and, therefore, numerosity is satisfied.

The plaintiffs have also successfully met the low threshold for commonality under Rule 23(a) which requires only a basic demonstration that there are common questions of law or fact in the case. Unlike the Rule 23(b)(3) requirement of common questions of law or fact, this requirement is a "low hurdle". It can be met by even a single common legal or factual issue. See Duhaime v. John Hancock Mut. Life Ins. Co., 177 F.R.D. 54, 63 (D.Mass.1997). That standard has clearly

been met in this case where the plaintiffs allege, and the defendants stipulate that "all of the putative class members purchased Zylon®-containing vests from First Choice or otherwise held common warrant rights".

■ With respect to typicality, the defendants challenge the standing of the Southern States to serve as a class representative because it seeks only injunctive relief and is, therefore, in a different position than the other putative class members who seek financial damages. While plaintiffs concede that most courts have held that associations do not have standing to seek damages for injuries to their members, they attempt to distinguish the present case on the grounds that the Southern States is only advancing a claim for injunctive relief. The Court is not persuaded.

Another session of this Court has recently addressed the question of whether an association can serve as a class representative for members seeking to recover monetary damages. See *In Re Pharmaceutical Industry*, 230 F.R.D. 61, 80 (D.Mass.2005). In that case, United States District Judge Patti Saris held that

> [w]hile the associations may have standing to press any class claims for non-monetary relief, plaintiffs have not moved to certify under Fed.R. Civ. P. 23(b)(2). The associations lack standing to serve as class representatives under Rule 23(b)(3).

*Id.* In this case, the plaintiffs have not moved to certify a class pursuant to Rule 23(b)(2). Therefore, despite their argument that Southern States would serve as class representative for only the injunctive relief claim, the Court concludes that it should not be appointed class representative.

The resolution of this issue, however, does not prevent the plaintiffs from meeting the typicality requirement. The additional Named Plaintiffs, Ohio state troopers Dennis Wilcox and George King and the Lowell, Massachusetts Police Department, clearly meet the typicality requirements. Their claims are virtually identical to those of the putative class members. All of the claims are predicated on the same alleged acts and omissions of the defendants and seek recovery for the same alleged defects in the First Choice Zylon® vests. The Court finds that the typicality requirement is, therefore, satisfied with respect to the Named Plaintiffs, excluding the Southern States. (Hereinafter, reference to the "the Named Plaintiffs" is meant to exclude the Southern States).

■ The parties raise no serious challenge to the final Rule 23(a) requirement, i.e. adequacy of representation. This fourth prerequisite requires that the plaintiffs demonstrate that the Named Plaintiffs will "fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). Specifically, it requires a demonstration that 1) there exists no conflict between the interests of the Named Plaintiffs and the class members and 2) counsel chosen by the Named Plaintiffs are qualified and able to litigate the claims vigorously. *See Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 130 (1st Cir.1985). With respect to the first requirement, plaintiffs contend that the Named Plaintiffs purchased First Choice Zylon® Vests and, thus, understand the nature of the Class's claims and their obligation as class representatives and have agreed to pursue those claims vigorously. As to the second requirement, neither party has raised an issue regarding the competency of the plaintiffs' counsel and the Court does not doubt their proficiency on the basis of the proceedings thus far.

## B. Fed.R.Civ.P. 23(b)(3) Requirements

In this case, plaintiffs move the Court to certify the class pursuant to Rule 23(b)(3), and therefore, in addition to the Rule 23(a) requirements, the court must be convinced that

> questions of law or fact common to the members of the class *predominate* over any questions affecting only individual members, and that a class action is *superior* to other available methods for the fair and efficient adjudication of the controversy.

Fed.R. Civ. P. 23(b)(3) (emphasis added). Before beginning the analysis, the Court notes that certification pursuant to Rule 23(b)(3) is "intended to be a less stringent requirement" than certification pursuant to either Rule 23(b)(1) or (b)(2). *Smilow*, 323

F.3d at 41. Moreover, the intent of this particular provision is to "enabl[e] consumers to pursue, *inter alia,* defective product claims". *Payne v. Goodyear Tire & Rubber Co.,* 216 F.R.D. 21, 26 (D.Mass.2003)(citing *Smilow,* 323 F.3d at 41).

### 1. Predominance

The question of predominance constitutes the core dispute between the parties. In contrast to the Rule 23(a) prerequisite of commonality, the "predominance" requirement is much more demanding, although it does not require complete uniformity. *See Amchem,* 521 U.S. at 623–24, 117 S.Ct. 2231. The First Circuit Court of Appeals has defined the predominance test as requiring the Court to find that "a sufficient constellation of common issues binds class members together". *Waste Mgmt. Holdings, Inc. v. Mowbray,* 208 F.3d 288, 296 (1st Cir.2000). The bar is "not high for class action suits vindicating the rights of consumers who purchased defective products." *Smilow,* 323 F.3d at 42 n. 9 (citation omitted).

In this case, all of the purported class members bought and/or used the Zylon® vests and received identical five-year warranties. The claims turn on whether the Zylon® vests were defective, whether the defendants breached the warranties provided to the purported class members and what, if any, damages were sustained by them. At this stage, the possibility of differing damages calculations is insufficient to deny certification. See *Smilow,* 323 F.3d at 40 ("[t]he individuation of damages in consumer class actions is rarely determinative under Rule 23(b)(3)").

#### a. Factual Issues

First, although the particular express warranty sewn into each vest was the same, the defendants argued at the hearing that there are several different vest products at issue in this litigation and each vest is rated to a specific "threat level". Therefore, in order to prove breach of warranty, the plaintiffs will have to prove that each category of vest was defective. The plaintiffs disagree and contend that the decertification of Zylon® vests by the NIJ in August, 2005 constitutes

a *per se* breach of warranty which applies to all putative class members.

The Court declines, for now, to decide the issue because, even if the NIJ decertification does not amount to a breach of warranty, the plaintiffs have sufficiently demonstrated that common issues predominate over individualized issues. It is undisputed that all of the purported class members purchased or used Zylon®-containing vests with five-year warranties. Again, the predominance test does not require complete uniformity of all of the claims.

Second, defendants contend that individual issues of care and maintenance of the vests and manufacturing content will predominate over any common questions. The plaintiffs respond that those individual questions of fact arise only in the context of affirmative defenses that may be raised by the defendants and that the First Circuit has found that such considerations should not affect class certification decisions:

> Courts traditionally have been reluctant to deny class action status under Rule 23(b)(3) simply because affirmative defenses may be available against individual members. Instead, where common issues otherwise predominated, courts have usually certified Rule 23(b)(3) classes even though individual issues were present in one or more affirmative defenses.

*Smilow,* 323 F.3d at 39 (citations omitted). Because questions pertaining to liability are common to all members of the putative Class, the Court concludes that class certification is not precluded by the possibility of individual questions of fact which may arise in the context of affirmative defenses.

#### b. Conflicts of State Law

Defendants also contend that the plaintiffs fail to show that common questions of law predominate because the legal claims are based on alleged violations of inconsistent provisions of the Uniform Commercial Code ("UCC") in the various states. Specifically, the defendants point to two discrepancies among the laws of the various jurisdictions with respect to express and implied warranties and affirmative defenses.

At the outset, the parties disagree as to who bears the burden of demonstrating that the laws of the various jurisdictions do (or do not) conflict. The defendants contend that because plaintiffs bear the burden of proving the other statutory prerequisites of class certification, they must also perform the choice of law analysis and demonstrate a lack of conflict in the law. The plaintiffs, predictably, disagree.

The law in this district is divided. *Compare Payne*, 216 F.R.D. at 27 (holding that "defendants bear the burden to show that conflicts would defeat the class") *with Gorsey v. I.M. Simon & Co., Inc.*, 121 F.R.D. 135, 140 (D.Mass.1988)(finding burden on plaintiff to perform choice of law analysis for class certification). In *Payne*, the Court analyzed the First Circuit's approach to conflict questions, generally, and held that the defendants carried the burden to demonstrate that such a conflict defeated the class. 216 F.R.D. at 27.

Although a general choice of law analysis places the burden on the challenger to demonstrate a conflict of law before a court undertakes the inquiry, see *Millipore Corp. v. Travelers Indem. Co.*, 115 F.3d 21, 29 (1st Cir.1997), this Court distinguishes that general rule and disagrees with the decision in *Payne* because there are important distinctions between a typical choice of law dispute and the special procedures involved in class certification. A motion for class certification is a special remedy that entails specific statutory requirements outlined in Fed.R.Civ.P. 23. In order to obtain class certification, a plaintiff at all times bears the burden of demonstrating that the Rule 23 requirements have been satisfied. *See Smilow*, 323 F.3d at 38; *Swack v. Credit Suisse First Boston*, 230 F.R.D. 250, 257 (D.Mass.2005) (citing cases). Fed.R.Civ.P. 23(b)(3) requires a finding that common questions of law predominate and this Court sees no reason to carve out an exception to shift the burden from the plaintiffs to the defendants in this particular case.

Nevertheless, after reviewing the extensive analysis and comparative charts created by the plaintiffs, the Court concludes that they have successfully carried their burden of establishing that the variations among state warranty law do not defeat the predominance of common legal issues.

### 1) Warranty Laws

Plaintiffs rely first on *In re Prudential Ins. Co. of America Sales Practices Litig.*, 962 F.Supp. 450 (D.N.J.1997), in which a District Court of New Jersey granted class certification in a case involving the laws of all 50 states. In that case, the Court found that the elements of the various common law claims were substantially similar in every state and that any differences fell into predictable patterns. The Court held, moreover, that to the extent necessary, the variations in the laws of the several states could be managed by the use of specific jury instructions fashioned to comport to the elements of the various common law claims. Plaintiffs contend that the warranty laws in this case are substantially similar and that, likewise, specific jury instructions will remedy any variations.

In two instances, courts in this circuit have allowed class certification in breach of warranty claims involving multiple jurisdictions. In *Mowbray*, the First Circuit Court of Appeals upheld a class certification for warranty claims extending into CA, GA, MD, MI, NY, PA and TX, several of which jurisdictions are involved in this case. 189 F.R.D. 194 (D.Mass.1999), *aff'd*, 208 F.3d 288 (1st Cir.2000). Moreover, in *Payne*, the Court found that there were no material conflicts between the warranty laws of CT, MA, NH and RI. 216 F.R.D. 21 at 23, 28. On the basis of those opinions, the plaintiffs contend there is *prima facie* evidence that, with respect to 11 of the 23 subject jurisdictions, there are no material warranty law conflicts.

The Court, therefore, focuses on the warranty laws of the remaining 12 jurisdictions. Variations exist between the laws of those jurisdictions regarding 1) statutes of limitation, 2) privity of contract and 3) formation of a warranty. After review of the plaintiffs' state-by-state analysis of the respective state laws, however, the Court concludes that those issues present no material conflicts.

With respect to the statute of limitations question, the First Circuit has held that the

mere fact that such concerns may arise and may affect different class members differently does not compel a finding that individual issues predominate over common ones.

*Mowbray,* 208 F.3d at 296. In this case, the plaintiffs convincingly demonstrate that any variations in the statute of limitations are immaterial because all of the claims fall within the appropriate time period.

The plaintiffs also successfully argue that there are no material conflicts with respect to the privity and formation of a warranty. According to the record evidence, the defendants provided a warranty to each member of the purported class which expressly extended privity. Therefore, it makes no difference whether the law regarding proof of privity varies between the states. Likewise, with respect to the issue of warranty formation, differences between state laws are immaterial because the defendants admit in their answer to the complaint that the language found on the label sewn into the First Choice Zylon® vests is a warranty.

Therefore, the plaintiffs have satisfied their burden of proving that there are no material warranty law differences in the various states. Moreover, any variations in state warranty laws can be managed and modified at a later stage, if necessary. *See Payne,* 216 F.R.D. at 25.

### 2) Affirmative Defenses

Although the defendants suggest that the plaintiffs have failed to demonstrate sufficient consistency between the laws of the subject jurisdictions with respect to the elements of affirmative defenses, the Court finds their argument unpersuasive. Several of the state laws cited by the defendants as inconsistent are taken from states that are not subject to this litigation. In any event, the principle of *In re Prudential* should apply equally to inconsistencies among the elements of affirmative defenses as it does to variations among the elements of warranty law, i.e. as long as common questions of fact and law predominate, variations among the several jurisdictions can be managed by the Court by use of special jury instructions,

verdict forms, sub-class certification or other means. 962 F.Supp. at 525.

Furthermore, the Court understands the First Circuit's holding in *Smilow* to suggest that the existence of potential affirmative defenses (and even a disparity among the laws with respect to such defenses) should not deter the Court from certifying the Class. 323 F.3d at 39 (holding that courts should certify classes even if individual issues may be present in affirmative defenses).

### 2. Superiority

The Court's analysis regarding the Fed. R.Civ.P. 23(a) and (b)(3) predominance requirements makes clear that a class action is "superior to other available methods for the fair and efficient adjudication of the controversy." There are several thousand potential claims at issue here. The potential differences in damages for each individual class member are insufficient to justify separate actions, nor would it be an efficient usage of judicial resources. Class certification here is not only appropriate but also necessary for the fair and efficient resolution of the controversy. See *Smilow,* 323 F.3d at 41 ("the core purpose of Rule 23(b)(3) is to vindicate the claims of consumers and other groups of people whose individual claims would be too small to warrant litigation").

### C. Subclass Certification

The plaintiffs also move the Court to certify Subclass A on Count V of the complaint which alleges unfair and deceptive trade practices. Subclass A comprises plaintiffs from eight states (AZ, CA, CO, FL, MA, NY, TX and WA) which the plaintiffs allege have similar consumer protection laws. Alternatively, the plaintiffs move, if the Court is inclined not to grant certification of Subclass A, for certification of Subclass B comprising only Massachusetts claims pursuant to M.G.L. ch. 93A.

On the question of certification of the subclass, the plaintiffs contend that the fraudulent misrepresentation arises out of the express warranty found in each class member's Zylon® vest. The defendants do not assert that factual differences exist but rather 1) argue that the plaintiffs have failed to comply

with the procedural prerequisites for filing consumer protection actions and 2) challenge the availability of class certification in this case because the various state consumer protection laws incorporate different legal standards.

Again, pursuant to the Court's earlier analysis regarding the predominance of legal issues, the plaintiffs bear the burden of demonstrating that the laws of different states do not vary significantly.

### 1. M.G.L. ch. 93A Notice Requirements

Defendants contend that the Massachusetts 93A claims fail as a matter of law because plaintiffs have not complied with the jurisdictional prerequisites, specifically the 30–day demand letter. The statute states, in operative part:

> At least thirty days prior to the filing of any such action, a written demand for relief, identifying the claimant and reasonably describing the unfair or deceptive act or practice relied upon and the injury suffered, shall be mailed or delivered to any prospective respondent.

M.G.L. c. 93A § 9(3). The defendants argue that the plaintiffs' two purported demand letters are defective as a matter of law.

The parties agree that there are two letters at issue here, one sent on May 19, 2005, and another on November 11, 2005, when the plaintiffs amended their complaint to add Herman and Dovner as defendants. The class action complaint was filed in this Court on January 5, 2006, more than 30 days after the two letters were provided to the defendants.

Defendants make no argument that the content of the demand letters was insufficient, but they contend that: 1) the demand letters were filed in reference to the original state proceeding and thus do not apply in this federal case and 2) the second demand letter was not provided to the newly-added defendants although it was sent to their attorney. The Court finds neither of those arguments persuasive.

■ With respect to the first argument, the Court finds no case law directly on the issue but concludes that in this case where the violations alleged in the state class action complaint are identical to those in the federal class action complaint there is no reason to hold that the plaintiffs have failed to meet their demand requirement because they failed to refile their demand letter.

The First Circuit described the "twin reasons" behind the demand letter requirement as such:

> first, to encourage negotiation and settlement and, second, to control the amount of damages recoverable by the plaintiff. If a reasonable settlement offer is rejected by the plaintiff, recovery will be limited to the amount of the offer.

*Thorpe v. Mutual of Omaha Ins. Co.*, 984 F.2d 541, 544 (1st Cir.1993)(citing *Slaney v. Westwood Auto, Inc.*, 366 Mass. 688, 704–05, 322 N.E.2d 768 (1975)). The Court finds that, in this case, the plaintiffs' demand letters fulfilled both of those reasons despite having been filed in the course of the state class action.

Although there are instances in which the Massachusetts courts have adhered strictly to the 93A demand requirement, those cases typically involve instances in which there is neither evidence of a demand letter nor any mention of such demand in the plaintiff's complaint. *See, e.g., City of Boston v. Aetna Life Ins.*, 399 Mass. 569, 506 N.E.2d 106 (1987); *Spilios v. Cohen*, 38 Mass.App.Ct. 338, 647 N.E.2d 1218 (1995). In this case, however, the plaintiffs sent demand letters, prior to the filing of both the state and federal claims (and more than 30 days prior to the filing in federal court). The Court concludes, therefore, that plaintiffs' letters were adequate and satisfied the purpose of the demand requirement. See *Tarpey v. Crescent Ridge Dairy, Inc.*, 47 Mass.App.Ct. 380, 713 N.E.2d 975 (1999)(allowing plaintiff to amend complaint and add 93A claim despite not having delivered a demand letter prior to the initial suit because the purposes of the demand requirement were satisfied).

As for the second argument, there is clear case law in support of providing a demand letter to counsel. See *Whelihan v. Markowski*, 37 Mass.App.Ct. 209, 638 N.E.2d 927

(1994)(concluding that the prerequisite to suit under c. 93A, § 9, was met when the plaintiffs sent her demand to the defendants' active counsel of record). Therefore, the Court concludes that the plaintiffs can proceed with their M.G.L. 93A claim.

## 2. Alternative Subclasses

Plaintiffs contend that the consumer protection laws of the eight subject jurisdictions in their purported Subclass A are substantially identical and that the factual questions to be answered are substantially the same. Unlike the warranty issue, however, the laws of those eight jurisdictions do not substantially mirror the UCC but are specific state law provisions. The defendants contend that the subject state laws vary considerably and that, therefore, the Court should not certify Subclass A.

■ As an initial matter, it is apparently undisputed that if Subclass A is certified, the Court will need to apply the laws of the eight different states. Under the choice of law rules in Massachusetts for fraud and misrepresentation, the law of the state in which a plaintiff took action in reliance on a defendant's representations applies. *See Bushkin Assoc., Inc. v. Raytheon Co.*, 393 Mass. 622, 632, 473 N.E.2d 662 (1985) (Massachusetts courts look to the Restatement (Second) of Conflict of Laws in determining choice of law issues); *see also* Restatement (Second) of Conflict of Laws § 148 (1971). Moreover, because state consumer protection laws are intended to protect consumers, the Court concludes that the laws of the home states will govern here. The question is whether the plaintiffs carry their burden of demonstrating that the common legal issues predominate notwithstanding the fact that Subclass A involves the law of eight separate states.

■ After review of the subject consumer protection laws, this Court concludes that variances in the substantive prerequisites of such claims render a certification of Subclass A unmanageable and contrary to the fair and efficient adjudication of this matter. Although another session of this Court has recently certified a multi-state consumer protection class, this session finds that the particular facts and legal issues in this case distinguishable. The Court will, nevertheless, certify Subclass B which comprises only Massachusetts state claims seeking relief under M.G.L. ch. 93A.

## D. Exclusions from the Class: State and Local Governments

The plaintiffs' putative class excludes federal agencies, but does not exclude the agencies of state and local governments. The defendants contend that state and local agencies, such as police departments, may not be represented as part of a class action. First, the defendants contend that no police department, except for the Lowell Police Department, has explicitly authorized plaintiffs' counsel to represent them in this action. Second, the defendants argue that other courts have excluded state agencies from class certification because their own state's attorney general is capable of representing their interests.

■ The Court finds the defendants' arguments unavailing. The authorities cited by the defendants do not mean that state agencies *cannot* be part of a class in this case. Moreover, the Court is persuaded by the cases cited by the plaintiffs which support their argument that this Court has certified state agencies as part of a class action so long as they are afforded the opportunity to opt out of the class. *See In re Lupron Mktg. & Sales Practices Litig.*, 228 F.R.D. 75 (D.Mass.2005); *Meyer v. Putnam Intern. Voyager Fund*, 220 F.R.D. 127 (D.Mass. 2004); *In re New England Mut. Life Ins. Co. Sales Practices Litig.*, 183 F.R.D. 33 (D.Mass.1998). It appears, therefore, that police departments may be certified as part of the class so long as they are afforded the opportunity to opt out of the class.

## ORDER

For the foregoing reasons, the Court certifies the Class and Subclass B but not Subclass A. Additionally, the Court certifies the Named Plaintiffs (Dennis Wilcox, George King and the Lowell Massachusetts Police Department) as representatives of the Class and Subclass B. Attorneys W. Pitts Carr and

David M. Cohen of Carr, Tabb & Pope, LLP are appointed as Lead Class Counsel and Michael Appel of Sugarman Rogers Barshak & Cohen, P.C., Herschel Sigall and Elaine Silveira as Class Counsel.

Accordingly, the plaintiffs are directed to prepare a notice plan, consistent with Fed. R.Civ.P. 23(c) and 23(d) to be submitted to the Court on or before March 30, 2007. Plaintiffs are to consult with the defendants and if no agreement can be reached, the defendants may submit objections on the date the notice plan is due. Defendants are ordered to cooperate with the plaintiffs to provide a list of all customers and any additional information in their possession or control that would aid in identifying Class members for the purpose of preparing the notice plan.

**So ordered.**