Raul J. **RODRIGUES** and Jo-Ann E. **Rodrigues, Plaintiffs,**

v.

**MEMBERS MORTGAGE CO., INC. and Plymouth Savings Bank, Defendants.**

**No. CIV.A.03–11301–PBS.**

United States District Court, D. Massachusetts.

June 30, 2004.

Cathleen M Combs, Law Offices of Claude Lefebvre & Sons, Pawtucket, RI, Christopher M. Lefebvre, Pawtucket, RI, Tara L. Goodwin, Heather Piccirilli, Edelman, Combs & Latturner, Chicago, IL, for Jo–Anne Rodrigues, Raul J. Rodrigues, Plaintiffs.

Arlene J. Fothergill, Law Office of Charles F. Houghton, Stoneham, MA, for

Members Mortgage Company, Inc., Counter Claimant.

Charles F. Houghton, Charles F. Houghton, Stoneham, MA, for Members Mortgage Company, Inc., Counter Claimant.

Daniel J. Pasquarello, Goodwin Procter, LLP, Boston, MA, for Plymouth Savings Bank, Plymouth Savings Bank, Counter Claimants.

Robin Stein, Law Offices of Charles F. Houghton, Stoneham, MA, for Members Mortgage Company, Inc., Defendant.

U. Gwyn Williams, Goodwin Procter, LLP, Boston, MA, for Plymouth Savings Bank, Plymouth Savings Bank, Counter Claimants.

## MEMORANDUM AND ORDER

SARIS, District Judge.

## I. INTRODUCTION

Plaintiffs Raul and Jo–Ann Rodrigues bring this proposed class action against Members Mortgage Company ("Members") and Plymouth Savings Bank ("Plymouth") for violating the disclosure requirements of the Federal Truth in Lending Act, 15 U.S.C. § 1635 ("TILA") and the Massachusetts Consumer Credit Cost Disclosure Act, Mass. Gen. Laws ch. 140D ("CCCDA").

Plymouth has filed a partial motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), which the Court *ALLOWS* in part.

## II. ALLEGED FACTS

On August 29, 2001, Plaintiffs Raul and Jo–Ann Rodrigues obtained a $53,000 second mortgage loan for the purpose of refinancing prior debts. The Plaintiffs are residents of Rhode Island, the loan was secured by refinancing the mortgage on their Rhode Island home, and the loan signing took place in Rhode Island.[1] The Plaintiffs entered into this loan agreement with Members Mortgage Company, a Massachusetts corporation. On the same day the Plaintiffs entered into this agreement, Members assigned the Rodrigues' loan to Plymouth Savings Bank. Plymouth is a state-chartered bank with offices in Middleboro, Massachusetts.

At the loan signing, the Plaintiffs were presented with several forms, including a form entitled "Notice Of Right To Cancel" ("Notice"). It informs the borrower: "You have a legal right under federal law to cancel the new transaction, without cost, within three business days of August 29, 2001." The form specifies how to cancel by notifying the Plymouth Savings Bank:

"Attn: Loan Closing Department, 151 Campanelli Drive, Middleboro, MA 02346"

(written in bold face).

In addition to the Notice Form, the Plaintiffs received a separate form entitled "Confirmation of Non–Exercise of Right to Cancel" ("Confirmation of Non–Exercise"). After specifically naming Plymouth Savings Bank as the lender, it stated:

1. **Transaction:** On *August 29, 2001*, (the "Closing Date"), the borrowers listed above (whether one or more, referred to as "Borrower") and Lender entered into a mortgage loan transaction.

2. **Notice of Right to Cancel Received:** Borrower acknowledges that on the Closing Date, Lender notified Borrower in writing of Borrower's right to cancel the loan within three (3) business

---

1. The Complaint fails to specify where the loan signing took place. During oral argument, however, Plaintiffs' counsel made clear that the loan signing took place in Rhode Island.

days of whichever of the following events occurred last:

(1) the date Borrower entered into the transaction;

(2) the date Borrower received a *Truth–In–Lending Disclosure;* or

(3) the date Borrower received notice of Borrower's Right to cancel.

3. **Truth–in–Lending Disclosure:** Borrower acknowledges that, on the Closing Date, Lender provided Borrower with a *Truth–In–Lending Disclosure.*

4. **Right to Cancel Not Exercised:** Borrower acknowledges that, after waiting three (3) business days, Borrower has not exercised and does not want to exercise the right to cancel the transaction which right Borrower has under law.

5. **Request for Proceeds:** Borrower requests Lender to disburse the loan proceeds in reliance on this document.

Borrower has signed this confirmation this____day of____.

RAUL R. RODRIGUES JO–ANN E. RODRIGUES
Borrower Borrower

The Plaintiffs did not wait three days to complete the Confirmation of Non–Exercise. Instead, they signed the form on August 29 although the Confirmation was post-dated September 4, 2001. (It is unclear when that date was type-written). The Plaintiffs allege it is Plymouth's standard practice to have consumers sign both the Notice and Confirmation of Non–Exercise at the time of closing. (Amended Complaint ¶ 15.)

On July 8, 2003, two years after the loan signing, the Plaintiffs notified Members and Plymouth of their election to rescind their mortgage loan. Plymouth honored the Rodrigues' rescission request by promptly depositing the contested loan funds into escrow. On July 11, 2003, the Plaintiffs filed a complaint with this Court alleging violations of TILA, 15 U.S.C.

§ 1601, *et seq.,* and its implementing Federal Reserve Board Regulation Z, 12 C.F.R. pt. 226. The Plaintiffs also ask this Court to exercise supplemental jurisdiction over the alleged CCCDA violations, Mass. Gen. Laws. ch. 140D, § 10 and the Massachusetts Division of Banks regulations, Mass. Regs.Code tit. 209, § 32.23.

## III. STANDARD OF REVIEW

For purposes of this motion, the Court takes as true "the well-pleaded facts as they appear in the complaint, extending [the] plaintiff every reasonable inference in his favor." *Coyne v. City of Somerville,* 972 F.2d 440, 442–43 (1st Cir.1992) (citing *Correa–Martinez v. Arrillaga–Belendez,* 903 F.2d 49, 51 (1st Cir.1990)). A complaint should not be dismissed under Fed. R.Civ.P. 12(b)(6) unless " 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Roeder v. Alpha Indus., Inc.,* 814 F.2d 22, 25 (1st Cir.1987) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

## IV. ANALYSIS

### A. *TILA Statutory Background*

TILA and CCCDA require lenders to make certain disclosures informing consumers of their right to rescind lending transactions when the loan is secured by the borrowers' primary residence. Congress enacted TILA "so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices." 15 U.S.C. § 1601(a). The content and presentation of loan agreements are regulated under TILA and implementing Federal Reserve Board Regulation Z,

12 C.F.R. § 226 (2004). "Regulation Z" specifies the notice requirements and rescission rights at issue in this case. 12 C.F.R. §§ 226.15 (2004).

█ TILA provides in relevant part:
[I]n the case of any consumer credit transaction ... in which a security interest ... is or will be retained or acquired in any property which is used as the principal dwelling of the person to whom credit is extended, the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this subchapter, whichever is later, by notifying the creditor, in accordance with regulations of the [Federal Reserve] Board, of his intention to do so. The creditor shall clearly and conspicuously disclose, in accordance with regulations of the Board, to any obligor in a transaction subject to this section the rights of the obligor under this section.

15 U.S.C. § 1635(a). Under TILA, borrowers who secure debt by refinancing their primary residence must receive notice that "clearly and conspicuously" discloses their right to rescind the transaction for three business days following the closing of the transaction. 12 C.F.R. § 226.17 ("[T]he creditor shall make the disclosure required by this subpart cleanly and conspicuously."). The sufficiency of TILA-mandated disclosures must be analyzed from the vantage point of an ordinary consumer. *See Smith v. The Cash Store Management*, 195 F.3d 325, 327–28 (7th Cir.1999) (holding that the allegation that the stapled receipt obscured the disclosures and that the printed contents of the receipt were confusing or misleading states a valid legal claim under TILA).

The sole instance in which the statute and its implementing regulations allow the consumer to waive her right to rescind within three days is where the consumer believes that a bona fide emergency necessitates an immediate extension of credit. 12 C.F.R. § 226.23(e).

"To exercise the right to rescind, the consumer shall notify the creditor of the rescission by mail, telegram, or other means of written communication." 12 C.F.R. § 226.23(a)(2). Regulation Z also requires lenders to inform borrowers "[h]ow to exercise the right to rescind, with a form for that purpose, designating the address of the *creditor's* place of business." 12 C.F.R. 226.15(b)(3) (emphasis added).

## B. *Notice to the Assignee*

█ At issue in this case is whether a creditor may designate an assignee instead of the creditor as the recipient of the rescission notice. A creditor is defined as "the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness ..." 15 U.S.C. § 1602(f). Section 1640(a) imposes liability for damages only on "creditors". TILA also provides that with certain exceptions, "any civil action for a violation of this subchapter ... which may be brought against a creditor may be maintained against any assignee of such creditor only if the violation for which each action or proceeding is brought is apparent on the face of the disclosure statement, except where the assignment was involuntary." *Id.* at § 1641(a). "Any consumer who has a right to rescind a transaction under § 1635 of this title may rescind the transaction as against any assignee of the obligation." *Id.* at § 1641(c).

In lieu of designating a creditor as the party to receive a borrower's rescission

notice, the Official Staff Commentary to Regulation Z allows a creditor to designate its agent as the recipient of notice. 12 C.F.R. 226, Supp. I, ¶ 15(a)(2)–1 ("The creditor may designate an agent to receive [notice of rescission] so long as the agent's name and address appear on the notice provided to the consumer . . . ."). Regulation Z does not specify whether a creditor may designate an assignee, such as Plymouth, as the party to receive a consumer's rescission notice.

■ Defendant argues that if a borrower can rescind the transaction with respect to an assignee, and a creditor has the right to designate an agent to receive the notice of rescission, it follows that a creditor may designate its assignee as the recipient of a borrower's rescission notice so long as there is a clear and conspicuous notice of how a consumer should exercise his rescission rights. Pointing to the plain language of the regulation, the Plaintiffs rely on the line of caselaw holding that TILA is a hypertechnical statute. *See Cash Store Management*, 195 F.3d at 328 (subject to narrow exceptions, "hypertechnicality reigns" in the application of TILA). While it is true that TILA is a hypertechnical statute, de minimis violations in compliance with notice requirements with "no potential for actual harm" do not violate TILA. *Cf. Bizier v. Globe Fin. Servs., Inc.*, 654 F.2d 1, 4 (1st Cir. 1981) (holding that a failure to meet disclosure request was not de minimis or hypertechnical where the "inaccuracy does have the potential for actual harm"); *see also Smith v. Highland Bank*, 108 F.3d 1325, 1327 (11th Cir.1997) ("TILA does not require perfect notice; rather it requires a clear and conspicuous notice of rescission rights.") (quoting *Veale v. Citibank, F.S.B.*, 85 F.3d 577, 580 (11th Cir.1996)); *Smith v. Chapman*, 614 F.2d 968, 972 (5th Cir.1980) ("Strict compliance does not necessarily mean punctilious compliance if, with minor deviations from the language described in the Act, there is still a substantial, clear disclosure of the fact or information demanded by the applicable statute or regulation."). Thus, even if there were a technical violation of Regulation Z, any failure to provide the address of the initial creditor on the notice is a minor deviation with "no potential for actual harm" where the creditor has designated the assignee as the designated recipient of the rescission notice, and its address was plainly given.

The Defendant's Motion to Dismiss the portion of the Plaintiffs' claim alleging TILA violations based on the designation of Plymouth as the recipient of rescission notice is *ALLOWED*.

### C. Waiver

■ In connection with their refinancing transaction, the Plaintiffs received two separate documents: the Notice informing them of their right to rescind and the Confirmation of Non–Exercise of that right. The Plaintiffs signed both of these documents at the time of closing. The Plaintiffs claim that Plymouth's purported practice of presenting both documents at the time of closing is misleading because it gives borrowers the impression they have waived their rescission rights by signing a confirmation of non-exercise on the date the transaction is consummated.

In support of their position, the Plaintiffs rely heavily on the Eleventh Circuit's decision in *Rodash v. AIB Mortgage Co.*, 16 F.3d 1142 (11th Cir.1994). In *Rodash*, the form disclosing the rescission rights contained a single signature line for the purpose of acknowledging both receipt of TILA's disclosure requirements and the election not to exercise rescission rights. *Id.* at 1145. The *Rodash* court held that this practice was objectively misleading:

Several considerations compel this conclusion. First, the appellees' proffering of the Election Not to Cancel during the transaction would confuse any reasonable borrower because it implies, incorrectly, that waiver is generally possible within the three-day cooling off period. Indeed, the presentation of a waiver form on the day of the transaction contradicted the very purpose of the cooling off period: to give the consumer time to consider the terms of her financial commitments. Second, by having Rodash sign a certificate of non-rescission on the date of the transaction, the appellees suggested that she had foreclosed her right of rescission. Thus, if Rodash had changed her mind the next day and wished to rescind the transaction, it would have been reasonable for her not to have exercised that right as a direct result of the improper furnishing of the Election Not to Cancel. Third, the appellees' practice of placing the acknowledgment and the waiver on the same page—indeed, in the same boilerplate paragraph—is confusing because an objective borrower may not understand what she is signing. Finally, we find that the appellees' practice of handing the consumer a waiver form the same day as the mortgage and Note is a misleading one, as the consumer, here Rodash, could reasonably think that she had to sign that form—as she must sign the other forms—to consummate the mortgage transaction.

*Id.* at 1146. The Plaintiffs place too much emphasis on *Rodash* because, as the Eleventh Circuit pointed out in a subsequent opinion, Congress amended TILA in 1995 to express its disapproval of lender liability resulting from minor violations of TILA's disclosure requirements. *See Highland Bank,* 108 F.3d at 1327 n. 4. In *Highland Bank,* the Eleventh Circuit limited the reach of *Rodash:*

Although Smith urges us to follow *Rodash,* the instant case is distinguishable in several material aspects. First, even though the Certificate of Confirmation appears on the same page as the Acknowledgment of Receipt, it is in a distinct paragraph, and, importantly, must be separately signed. Second, although the form was proffered on the *date of* the mortgage transaction, it does not mislead the consumer as to whether she may rescind during the three-day period following the transaction. It indicates that the consumer is not to sign the Certificate of Confirmation until more than three business days have elapsed, and the Certificate of Confirmation subsection of the form is dated several days after the Acknowledgment of Receipt. Third, Highland's form provided Smith with much more detailed information about how to cancel the mortgage transaction than the form at issue in *Rodash,* thereby counteracting any confusion that the form might otherwise cause. Finally, although Smith creatively illustrates how one could be misled by the "Note" below the Certificate of Confirmation, it is clear that the intent of the "Note" is to ensure that all of the signatories to the Acknowledgment of Receipt concur in the decision not to rescind.

*Id.* at 1327 (footnotes omitted). Distinguishing *Rodash* as involving egregious facts, the court emphasized that an analysis of disclosure requirements is not "mechanical" but rather should be based on the "totality of the circumstances." *Id. Highland Bank* also held there is no *per se* ban on providing both an acknowledgment receipt and waiver of rescission on the same form. *Id.* at 1327 n. 1. *Highland Bank* is unhelpful on one key point: it does not specify *when* the waiver was signed.

Although there is no bar to the provision of both forms simultaneously, concerns are triggered when a borrower is asked to sign the waiver at the closing, before the three-day cooling off period has expired. As one court pointed out:

> the language of the election not to rescind is both objectively false and internally inconsistent. While the first two sections of the one-page notice document explicitly state the time period and procedure for rescission, the disputed provision states on the very same page that the lender "certif[ies] that the rescission period *has expired.*" Such a statement is simply false and directly in conflict with the language stating "[y]ou have a legal right under federal law to cancel this transaction, without cost, within *THREE (3) BUSINESS DAYS ....*" A prospective borrower signing the document at closing is bound to be confused about whether her right of rescission has actually passed.

*Wiggins v. Avco Fin. Servs.,* 62 F.Supp.2d 90, 96–97 (D.D.C.1999) (finding TILA violation where "plaintiff did not receive clear and conspicuous notice of her right to rescind" "because the election not to rescind is inherently confusing in both its language and its placement on the notice document as a whole"). Similarly, here the "confirmation" in section 4 states that: "Right to Cancel Not Exercised: Borrower acknowledges that, after waiting three (3) business days, Borrower has not exercised and does not want to exercise the right to cancel the transaction which right Borrower has under law." *See also Pulphus v. Sullivan,* 2003 WL 1964333 at *15 (N.D.Ill. Apr.28, 2003) (plaintiff stated a claim for failure to provide notice of rescission rights where she alleged that, although her confirmation of election not to rescind was dated three business days after the closing, she was directed to sign it on the day of the closing); *Latham v. Residential Loan Centers*

*of Am.,* 2004 WL 1093315 at *4 (N.D.Ill. May 6, 2004) (same). Defendant cites only one contrary case, *Contimortgage Corp. v. Delawder,* 2001 WL 884085 (Ohio App. July 30, 2001), but that case is not persuasive for a number of reasons. First, it was decided after a bench trial, not in the context of a motion to dismiss. Second, it appears to be unpublished, and third, it acknowledges that it is disagreeing with federal caselaw concluding that the signing of a post-dated waiver of the right to rescind a loan transaction violates the TILA.

Here, the Plaintiffs were asked to sign both the rescission notice and the Confirmation of Non–Exercise at the time of closing. Objectively speaking, there is nothing misleading about the boilerplate forms themselves, nor is there anything objectively misleading about providing both forms at the closing. What has the serious potential for actual harm is the request to *sign* both forms at the closing. Not only might a reasonable borrower believe it was necessary to sign both forms at the time of closing, but the practice is particularly confusing because a reasonable borrower might not understand that despite signing the confirmation he still had the right to rescind in the three day cooling off period. The Defendant's Motion to Dismiss is ***DENIED***.

## D. *Statute of Limitations*

 Section 1635(f) provides the statute of limitations applicable to an obligor's right of rescission. With exception not applicable here, this section states: "An obligor's right of rescission shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first, notwithstanding the fact that the information and forms received under this section or any other disclosures required under this part have not been delivered to the obligor

...." 15 U.S.C. § 1635(f). When a borrower has a right to rescind based on violations of Section 1635, the borrower has the right to additional relief. Section 1635(g) provides: "In any action in which it is determined that a creditor has violated this section, in addition to rescission the court may award relief under section 1640 of this title for violations of this subchapter not relating to the right to rescind." *Id.* at § 1635(g). Section 1640(e) provides that "[a]ny action [to recover statutory damages] under this section may be brought ... *within one year from the date of the occurrence of the violation.*" *Id.* at § 1640(e) (emphasis added).

The Defendant argues that the Plaintiffs' claim for statutory damages is time-barred because the Plaintiffs filed their original complaint in July 2003, two years after the alleged disclosure violations took place. The Plaintiffs contend that when a borrower has three years to exercise his right of rescission based on disclosure violations under § 1635(f), the statutory damages period under § 1640(e) is extended for three years.

Most courts have held that a claim for statutory damages under TILA must be brought within one year of the date the disclosure violation occurred. *See, e.g.,* *Smith v. Fid. Consumer Disc. Co.,* 898 F.2d 896, 903 (3d Cir.1990); *Rudisell v. Fifth Third Bank,* 622 F.2d 243, 246 (6th Cir.1980) (one-year statute of limitations on claim for damages starts to run on date disclosures should have been made); *Basham v. Fin. Am. Corp.,* 583 F.2d 918, 927–28 (7th Cir.1978); *Wiggins,* 62 F.Supp.2d at 97; *but see McIntosh v. Irwin Union Bank and Trust, Co.,* 215 F.R.D. 26, 30 (D.Mass.2003) (holding that "if the plaintiffs have the right to rescind based on a lack of a material disclosure, the three year period for rescission claims under Section 1635(g) applies").

This Court concludes that actions for statutory damages under TILA must be brought "within one year from the date of the occurrence of the violation." 15 U.S.C § 1640(e). Based on the foregoing, the Defendants' Motion to Dismiss the Plaintiffs' claim for statutory damages under Section 1640(e) is *ALLOWED*.

### E. *CCCDA Claim*

■ In addition to claims brought under TILA, the Plaintiffs also allege that Members and Plymouth violated the disclosure requirements of CCCDA, Mass. Gen. Laws ch. 140D. Like its federal counterpart, CCCDA is designed to protect consumers and assure a meaningful disclosure of credit terms. *Desrosiers v. Transamerica Fin. Corp.,* 212 B.R. 716, 722 (Bankr. D.Mass.1997). The disclosure requirements of TILA and CCCDA are essentially the same and generally do not require separate analysis. *Bizier,* 654 F.2d at 2. The relationship between CCCDA and TILA involves "an unusual interplay of federal and state law." *Id.*

■ This case raises the novel issue of whether a plaintiff may bring a CCCDA claim against a Massachusetts lender when the transaction giving rise to the claim takes place in another state. Had the Plaintiffs' lending transaction taken place in Massachusetts instead of Rhode Island, the issue of whether CCCDA applies to their transaction would be straightforward, because lending transactions "within" Massachusetts are exempt from the disclosure requirements of TILA and Regulation Z. *See* 15 U.S.C. § 1633; 12 C.F.R. § 226.29. Section 1633 of TILA provides:

The [Federal Reserve] Board shall by regulation exempt from the requirements of this part any class of credit transactions *within* any State if it determines that under the law of that State that class of transactions is subject to

requirements substantially similar to those imposed under this part, and that there is adequate provision for enforcement.

15 U.S.C. § 1633 (emphasis added).

Pursuant to its authority under Section 1633, the Federal Reserve Board has determined that CCCDA imposes requirements "substantially similar" to TILA and therefore credit transactions *within* Massachusetts are exempt from TILA's disclosure requirements. *See* 12 C.F.R. pt. 226, Supp. I § 29(a)(4); *Bizier*, 654 F.2d at 2. ("[T]ransactions within Massachusetts [are exempt] from the federal disclosure requirements."). This exemption, however, does not extend to the civil liability provisions of TILA. 12 C.F.R. § 226.29(b)(1) ("No exemptions granted under this section shall extend to the civil liability provisions of sections [1640] and [1641] of the Act."). *See* 12 C.F.R. pt. 226, Supp. I § 29(b) ("The provision that an exemption may not extend to sections [1640 and 1641] of the Act assures that consumers retain access to both Federal and State Courts . . . .").

While TILA and CCCDA are substantially similar, they differ in their respective statutes of limitations. TILA provides a one-year statute of limitations for damages under § 1640(e) and a three-year limit for rescission under § 1635(f), whereas CCCDA provides a four-year statute of limitations for both rescission and damages claims. Mass. Gen. Laws ch. 140(D), § 10(f) (statute of limitations for rescission); Mass. Gen. Laws ch. 260, § 5A (statute of limitations for damages).

Here, because the transaction occurred in Rhode Island, CCCDA does not apply and TILA provides the governing statute of limitations. Defendant's Motion to Dismiss the Plaintiffs' CCCDA claim is *AL-LOWED*.

## V. ORDER

For the foregoing reasons, the Defendant's Motion to Dismiss (Docket No. 26) is *ALLOWED* with respect to the portions of the Plaintiffs' complaint alleging violations of TILA based on the designation of Plymouth as the recipient of rescission notice, *ALLOWED* with respect to the Plaintiffs' claim for statutory damages, and *ALLOWED* with respect to Plaintiffs' CCCDA claim. Otherwise, the motion is *DENIED*.