**Raul J. RODRIGUES and Jo–Ann E. Rodrigues, Plaintiffs,**

v.

**MEMBERS MORTGAGE CO., INC. and Plymouth Savings Bank, Defendants.**

**No. CIV.A.03–11301–PBS.**

United States District Court, D. Massachusetts.

Feb. 3, 2005.

Cathleen M. Combs, Christopher M. Lefebvre, Law Offices of Claude, Lefebvre & Sons, Pawtucket, RI, Tara L. Goodwin, Edelman, Combs & Latturner, Chicago, IL, for plaintiffs.

Daniel J. Pasquarello, U. Gwyn Williams, Goodwin Procter, LLP, Boston, MA, for Defendants.

## MEMORANDUM AND ORDER

SARIS, District Judge.

### I. INTRODUCTION

Plaintiffs Raul and Jo–Ann Rodrigues brought this proposed class action against Members Mortgage Company ("Members") and Plymouth Savings Bank ("Plymouth") for violating the Federal Truth in Lending Act, 15 U.S.C. § 1635 ("TILA"). Plaintiffs move for class certification and for leave to amend their complaint to add as additional plaintiffs and class representatives certain Massachusetts residents who received mortgages on their homes in Massachusetts. They also seek to remove Raul Rodrigues as a class representative. After hearing, plaintiffs' motion for class certification is **ALLOWED**. Plaintiffs' motion for leave to amend their complaint is **ALLOWED**.

### II. BACKGROUND

The Court incorporates by reference the alleged facts as it has previously stated them and summarizes briefly those relevant to the pending motions. *See Rodrigues v. Members Mortgage Co., Inc.*, 323 F.Supp.2d 202, 203–05 (D.Mass.2004) (Memorandum and Order allowing in part defendants' motion to dismiss).

On August 29, 2001, plaintiffs Raul and Jo–Ann Rodrigues closed a $53,000 second mortgage loan to refinance prior debts. The loan was used to pay off a prior mortgage made by Mariner Mortgage and held by Chase Home Mortgage. Plaintiffs, who are Rhode Island residents, entered into the new loan agreement with Members, a Massachusetts corporation that provides mortgages in Connecticut, Maine, Massachusetts, New Hampshire, and Rhode Island. (Joseph Zampitella depo. at 7, 13–14.) On the day of the closing, Members assigned the Rodrigues loan to Plymouth—or, in the language of the trade,

Plymouth "table-funded" the Rodrigues loan. Plymouth table-funded more than 100 Members refinance loans each year from 2001 through 2003. (Zampitella depo. at 18–19.)

Plymouth and Members retain attorneys to serve as loan closing agents on a case-by-case basis. (Leonard Bolton depo. at 44–45; Zampitella depo. at 24.) Attorney Charles White ("White") was retained to serve as the closing agent at the plaintiffs' closing. (Bolton depo. at 44–45.) Plymouth provided White with a "Closing Package Instruction Sheet" ("closing instructions"). Item number seven on the closing instructions states: "Right of Rescission/Non–Exercise of Right to Cancel Required".

At the plaintiffs' closing, White presented them with several forms, including a "Notice Of Right To Cancel" ("Notice"). The Notice informs the borrower: "You have a legal right under federal law to cancel the new transaction, without cost, within three business days of August 29, 2001." The Notice also describes the scope of the cancellation right: "If you cancel the new transaction, your cancellation will apply to the increase in the amount of credit, to all of the terms and conditions of the new transaction, and to the mortgage as it applies to the increased amount.... If you cancel by the date shown below, your cancellation will not affect the amount that you presently owe or any mortgage on your home securing that amount."

However, the Notice misstated plaintiffs' right to cancel. The form used in plaintiffs' transaction is appropriate where a loan issued by creditor A is refinanced by creditor A. In that circumstance, the right to rescind is limited to the additional amount of the new loan. In this case, a full right to rescind applied because a loan issued by creditor A was refinanced by creditor B. See 12 C.F.R. § 226.23(f)(2) (2004).

White also provided a separate form entitled "Confirmation of Non–Exercise of Right to Cancel" ("Confirmation"). The Confirmation states: "Borrower acknowledges that on the Closing Date, Lender notified Borrower in writing of Borrower's right to cancel the loan within three (3) business days." The Confirmation further states: "Borrower acknowledges that, after waiting three (3) business days, Borrower has not exercised and does not want to exercise the right to cancel the transaction which right Borrower has under law." Unlike the Notice, the Confirmation was facially correct.

White's standard practice was to post-date the Confirmation and instruct borrowers to sign it at the closing because he could not disburse loan funds without a signed Confirmation. He also would instruct borrowers orally that they could still rescind their loan, even though they had signed the Confirmation, until the end of the three-day period (and that he would "tear up" the Confirmation if they did so). (White depo. at 22–26.) The plaintiffs signed the Confirmation, which was post-dated September 4, at the closing on August 29, 2001.[1] Defendant Plymouth ceased using the Notice and Confirmation forms at issue in this case in October 2001.

On July 11, 2003, the plaintiffs filed a complaint with this Court alleging violations of TILA and its implementing Federal Reserve Board Regulation Z, 12 C.F.R. pt. 22. Specifically, plaintiffs contend that defendants violated TILA by (1) misstating the scope of plaintiffs' rescission rights on the Notice and (2) instructing plaintiffs to sign the post-dated Confirmation at the closing on August 29.

This Court previously allowed Plymouth's motion to dismiss the plaintiffs' claim under the Massachusetts truth-in-lending statute because the transaction in question did not take place within Massachusetts. See Rodrigues, 323 F.Supp.2d at 210–11. In the amended complaint, plaintiffs moved to certify a class that they define as (1) all natural persons (2) who obtained non-purchase money loans that were secured by their residences (3) from July 11, 2000 to October 2001 when defendant Plymouth stopped using the Notice and Confirmation forms (4) for purposes other than the initial construction or acquisition of those residences (5) where the

---

1. *Michael and Lisa Phillips, whom the plaintiffs* move to add to their complaint as plaintiffs and representatives for a Massachusetts class, also *allege that they were instructed to sign the Confirmation at their closing.*

persons either (i) received a document in the form of the Notice or (ii) signed a document in the form of the Confirmation.

Plaintiffs now move for leave to amend their complaint to designate Mrs. Rodrigues as named class representative for their original class claim and to add a Massachusetts class claim for statutory damages and rescission with Massachusetts residents as class representatives.

### III. STANDARD OF REVIEW

Plaintiffs seek class certification pursuant to Fed.R.Civ.P. 23(b)(3). Rule 23 requires as prerequisites to class certification that "(1) the class is so numerous that joinder of all members is impracticable" ("numerosity"), "(2) there are questions of law or fact common to the class" ("commonality"), "(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class" ("typicality"), and "(4) the representative parties will fairly and adequately protect the interests of the class" ("adequate representation"). *See Smilow v. Southwestern Bell Mobile Sys., Inc.,* 323 F.3d 32, 38 (1st Cir.2003). Rule 23(b)(3) further requires that "questions of law or fact common to the members of the class predominate over any question affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R.Civ.P. 23(b)(3). A district court "must conduct a rigorous analysis of the prerequisites ... before certifying a class." *Smilow,* 323 F.3d at 38.

### IV. ANALYSIS

#### A. *Numerosity*

■ Plaintiffs ask this Court to infer that Members closed more than 100 Plymouth-table-funded loans during 2000–2001 based on the deposition testimony of the president of Members that more than 100 such loans closed each year from 2001 through 2003.[2]

While 100 is on the high side, given the volume of loans between 2001 and 2003, it is reasonable to infer that there were more than forty Members–Plymouth loans in 2000–2001, particularly if those in Massachusetts are included. *See McLaughlin v. Liberty Mut. Ins. Co.,* 224 F.R.D. 304, 307 (D.Mass. 2004) ("Other courts in this district have noted that a 40 person class is 'generally found to establish numerosity.'") (citations omitted); *see also McCuin v. Sec'y of Health & Human Servs.,* 817 F.2d 161, 167 (1st Cir.1987) ("[D]istrict courts may draw reasonable inferences from the facts presented to find the requisite numerosity."); *Westcott v. Califano,* 460 F.Supp. 737, 744 (D.Mass. 1978).

Plymouth points out that some of these loans may not carry TILA rescission rights if, for instance, a borrower secured a loan for business purposes with his primary dwelling or if the loan is paid off. However, Plymouth has not indicated how many loans would be ineligible for rescission or whether the volume of such loans undermines a conclusion of numerosity.

Members counters by referring only to the number of its Plymouth-table-funded loans closed in Rhode Island and New Hampshire during this period.[3] Rhode Island and New Hampshire operate under TILA. In contrast, Connecticut, Maine, and Massachusetts each are exempt from TILA because they have "substantially similar" state truth-in-lending statutes. *See* 12 C.F.R. pt. 226, Supp. L, § 226.29, ¶ 29(a)(4) (listing Connecticut, Maine, and Massachusetts among states exempt from portions of TILA); *id.* ¶ 29(a)(2) (discussing "substantial similarity" requirement for state exemption); *see also Rodrigues,* 323 F.Supp.2d at 210–11 (discussing Massachusetts statute and federal exemption). Members contends that Mrs. Rodrigues, a Rhode Island resident bringing a personal claim under TILA, lacks standing to represent class members bringing claims un-

---

**2.** Plymouth stipulated to numerosity; Members did not.

**3.** Members argues that certifying a class against it is inappropriate because Plymouth provided the forms. However, Members cannot evade lia-

bility just because Plymouth, an assignee, provided the forms. As lender, Members must ensure meaningful disclosure on credit forms. *See* 15 U.S.C. § 1635(a).

der state statutes.[4] Indeed, this is the basis for plaintiffs' motion to amend their complaint to add a Massachusetts class claim and Massachusetts named plaintiffs.

This Court previously held that plaintiffs could not bring an individual claim under the Massachusetts truth-in-lending statute. *See Rodrigues*, 323 F.Supp.2d at 211 (dismissing plaintiffs' claim under the Massachusetts Consumer Credit Cost Disclosure Act). However, the Court's ruling does not preclude certification of Mrs. Rodrigues as the named representative for a class that includes members with claims under state truth-in-lending statutes, so long as she meets the other class representative requirements (like typicality). *See In re Relafen Antitrust Litig.*, 221 F.R.D. 260, 268 (D.Mass.2004) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 612, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997)) (allowing class certification where standing issues "would not exist but for the class action certification") (internal brackets omitted); *Mowbray v. Waste Mgmt. Holdings, Inc.*, 189 F.R.D. 194, 195–202 (D.Mass.1999), *aff'd*, 208 F.3d 288 (1st Cir.2000) (holding that named plaintiff bringing claim under Illinois law could adequately represent class members with claims under other states' laws); *see also Payton v. County of Kane*, 308 F.3d 673, 680 (7th Cir. 2002) (allowing class certification in which named plaintiffs did not have personal claims against every defendant because "once a class is properly certified, . . . standing requirements must be assessed with reference to the class as a whole, not simply with reference to the individual named plaintiffs"). "This is not a case where the named plaintiff is trying to piggy-back on the injuries of the unnamed class members." *Payton*, 308 F.3d at 682. Therefore, including putative class members from all five states, plaintiffs have satisfied the numerosity requirement.

### B. *Commonality, Typicality, & Adequacy*

■ Plaintiffs have met the commonality, typicality, and adequacy requirements. *See Payne v. Goodyear Tire & Rubber Co.*, 216 F.R.D. 21, 25 (D.Mass.2003) ("The 'commonality' requirement is satisfied if 'common questions of law or fact exist' and 'class members' claims are not in conflict with one another.") (quoting *Mack v. Suffolk County*, 191 F.R.D. 16, 23 (D.Mass.2000)); *see also Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 157 n. 13, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982) ("The commonality and typicality requirements of Rule 23(a) tend to merge."). First, the class members' respective claims are not in conflict and each shares common questions: (1) whether the class member received the form Notice and Confirmation at the loan closing; (2) whether the class member was required to sign the Confirmation at the closing; (3) whether instructing a borrower to sign the Confirmation at a closing violates TILA or a comparable state statute; and (4) whether the description in the form Notice of the scope of rescission violates TILA or a comparable state statute.

Next, the "named plaintiffs' claims arise from the same course of conduct that gave rise to the claims of the absent [class] members"—namely, the conduct of Members, Plymouth, and their agents at loan closings. *In re Relafen*, 221 F.R.D. at 267 (quoting *Duhaime v. John Hancock Mut. Life Ins. Co.*, 177 F.R.D. 54, 63 (D.Mass.1997)); *see Payne*, 216 F.R.D. at 26 (Typicality requires "the same essential characteristics" among claims.).

Finally, Mrs. Rodrigues has retained counsel with significant experience in class representation. *See, e.g., Mack*, 191 F.R.D. at 23 (Adequacy "requires that Plaintiff demonstrate that her interests will not conflict with those of class members and that her counsel is qualified, experienced and able to vigorously conduct the proposed litigation."). Also, Mrs. Rodrigues has a sufficient (albeit imperfect) understanding of the issues in the suit to be a representative. The fact that Mrs. Rodrigues, if she prevails, may rescind her loan while other plaintiffs may not creates no conflict because all she is seeking in this action is a declaration of the right to rescind.

### C. *Predominance & Superiority*

In considering the predominance and superiority requirements for class certification,

---

4. Defendants do not address this issue directly in the context of numerosity.

the Court examines "(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action." Fed.R.Civ.P. 23(b)(3). This list of factors is "nonexhaustive." *Amchem,* 521 U.S. at 615–16, 117 S.Ct. 2231.

■ The real class certification dispute in this case concerns predominance. "Common issues predominate where individual factual determinations can be accomplished using computer records, clerical assistance, and objective criteria—thus rendering unnecessary an evidentiary hearing on each claim." *Smilow,* 323 F.3d at 40; *see Mattoon v. City of Pittsfield,* 128 F.R.D. 17, 20 (D.Mass.1989) ("The common issues must actually outweigh the individual ones in terms of quantity or quality.") (quoting *Ryan v. Eli Lilly & Co.,* 84 F.R.D. 230, 233 (D.S.C.1979)); *id.* ("[C]ommon issues are predominant only if their resolution would 'provide a definite signal of the beginning of the end.'") (quoting *Mertens v. Abbott Labs.,* 99 F.R.D. 38, 41 (D.N.H.1983)).

Defendants argue that plaintiffs' claim regarding signing the Confirmation at the loan closing fails the predominance requirement. As this Court has previously stated, neither the Notice or Confirmation forms or the provision of both forms at a closing is objectively misleading as to a borrower's three-day rescission window. *Rodrigues,* 323 F.Supp.2d at 209. The forms correctly state the borrower's rights in this regard. However, "concerns are triggered when a borrower is asked to sign the [Confirmation] at the closing." *Id.*

■ Plaintiffs allege that requiring a borrower to sign a post-dated Confirmation at a closing violates TILA and state law even if the closing agent orally instructed the borrowers that they still had the three-day window to cancel. Therefore, the determination of whether each putative class member suffered a TILA or state statute violation related to signing a post-dated Confirmation at a closing does not require fact finding specific to each closing. *See Waste Mgmt.,* 208 F.3d at 298 ("[A] district court must formulate some prediction as to how specific issues will play out in order to determine whether common or individual issues predominate in a given case."). Defendants seem to be arguing that the validity of each post-dated Confirmation signed at a closing depends on the subjective understanding of the borrower. For example, defendants assert that TILA was not violated if a borrower understood that she still could rescind within three days, even though she had already signed the Confirmation form. However, the legal question is common: whether the subjective understanding of the borrowers with respect to their rights negates a prima facie TILA violation.

The parties dispute whether the instructions support an inference that every Plymouth closing agent (1) provided both the Notice and Confirmation to the borrower at each closing and (2) required the borrower to sign the Confirmation at the closing. Plaintiffs have offered sufficient evidence that Plymouth's standard practice was to have borrowers sign the Confirmation at the closing. Yet Plymouth argues that there is no easy way to determine when borrowers signed the forms if they were always post-dated. Plaintiffs respond that this can be determined from when the closing occurred (relative to when defendants' closing practices were in effect).

In any event, if plaintiffs prove that Plymouth instructed all its closing agents to require borrowers to sign at the closing, individual inquiry is unnecessary. If Plymouth demonstrates that there was no standard closing practice, it may move to decertify the class because then individual issues may well predominate. *See Kent v. SunAmerica Life Ins. Co.,* 190 F.R.D. 271, 279 (D.Mass.2000) ("Even greater factual disparities in the evidence before the court would exist among potential class members if the court were ... deciding what oral representations were typical."). At present, a class action is the best method to resolve this controversy, which involves multiple consumer actions alleging a

common course of conduct. *See Smilow,* 323 F.3d at 41 n. 9; *see also In re Relafen Antitrust Litig.,* 218 F.R.D. 337, 346 (D.Mass.2003) (class action superior because it "would provide substantial savings in time, effort, and expense") (citing *Amchem,* 521 U.S. at 615, 117 S.Ct. 2231).

■ Plaintiffs' claim regarding the Notice's description of the scope of rescission also meets both the predominance and superiority requirements. *See Smilow,* 323 F.3d at 40. The description appears on the face of the Notice. Thus, to the extent that this description is wrong the provision of the Notice at a closing is objectively misleading as to the scope of a borrower's rescission rights. *Cf.* 12 C.F.R. § 226.17(a)(1) ("The creditor shall make the disclosures required by this subpart clearly and conspicuously in writing, in a form that the consumer may keep."). Defendants may present evidence on this issue regarding individual borrowers, loans, or closings. Moreover, if defendants propose appropriate language, the Court will exclude from the class persons who as a matter of law have no right to rescind or have unique issues, i.e., those whose rescission rights have terminated due to bankruptcy, foreclosure, or redemption. *See Smilow,* 323 F.3d at 39 ("After all, Rule 23(b)(3) requires merely that common issues predominate, not that all issues be common to the class."); *id.* (noting with approval that "[c]ourts traditionally have been reluctant to deny class action status under Rule 23(b)(3) simply because affirmative defenses may be available against individual members").

Defendants rely on cases that hold that TILA claims seeking a declaration of the right to rescind under § 1635(b)[5] are inappropriate for class resolution. *See, e.g., James v. Home Const. Co. of Mobile, Inc.,* 621 F.2d 727, 730–31 (5th Cir.1980) (agreeing with district court in TILA case that rescission was a "purely personal remedy" and inappropriate for class action); *Gibbons v. Interbank Funding Group,* 208 F.R.D. 278, 285 (N.D.Cal.2002). They argue that § 1640, which expressly permits class action claims

for damages, is silent as to class actions for rescission.

■ This Court agrees with those courts that have held class resolution appropriate for claims seeking a declaration of the right to rescind under TILA. *See McIntosh v. Irwin Union Bank & Trust, Co.,* 215 F.R.D. 26, 32–33 (D.Mass.2003) (Young, C.J.) (discussing split among courts regarding propriety of class resolution for TILA rescission claims and holding class action appropriate, especially when "the plaintiffs seek only declaratory relief"); *Williams v. Empire Funding Corp.,* 183 F.R.D. 428, 435–36 (E.D.Pa. 1998). "[T]here is nothing in the language of TILA which precludes the use of the class action mechanism provided by Rule 23 to obtain a judicial declaration whether an infirmity in the documents, common to all members of the class, entitles each member of the class individually to seek rescission." *Williams,* 183 F.R.D. at 435–36. Defendants' *sturm und drang* about the catastrophic effects of a declaration of a right to rescind is particularly unpersuasive in light of the relatively small class involved and the fact that, as they note, few borrowers are apt to request rescission because of the hassle and likely higher interest rate involved in refinancing.

### D. *Motion to Amend Complaint*

Plaintiffs have moved to amend their complaint, adding Massachusetts named plaintiffs and Massachusetts statutory damages claims against Plymouth only and designating Mrs. Rodrigues, alone, the named plaintiff for the original class claim. Defendants argue that the motion is untimely and will require discovery to be reopened. *See Steir v. Girl Scouts of the USA,* 383 F.3d 7, 12 (1st Cir.2004) ("Particularly disfavored are motions to amend whose timing prejudices the opposing party by requiring a re-opening of discovery . . . .") (citation and internal quotations omitted). Plaintiffs respond that the delay is not unreasonable since they identified the new class representatives as soon as

---

5. "Within 20 days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property . . . and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction."

possible after the Court's ruling on the motion to dismiss.

The parties' did not address the distinction between claims for rescission and claims for statutory damages by Massachusetts residents. The Court previously allowed defendants' motion to dismiss plaintiffs' personal claim for statutory damages under TILA because it was untimely. *See Rodrigues,* 323 F.Supp.2d at 210. Therefore, although Mrs. Rodrigues would be an adequate representative for Massachusetts rescission claims, she could not represent any Massachusetts claims for damages. Contrary to defendants' assertions, creating a separate Massachusetts class or subclass would not cause substantial delay or prejudice. Consequently, the parties may have an additional 60 days for any discovery regarding the creation of a separate Massachusetts class or subclass seeking statutory damages.

## V. ORDER

Plaintiffs' motion for leave to file a second amended complaint (Docket No. 56) is *ALLOWED*. Plaintiffs' amended motion for class certification (Docket No. 44) is *ALLOWED* as follows:

With respect to a claim for a declaration of a right to rescission, pursuant to Fed. R.Civ.P. 23(b)(3), the Court certifies a class represented by Mrs. Rodrigues consisting of (a) all natural persons who obtained non-purchase-money loans from Members that were table-funded by Plymouth; (b) that were secured by their residences; (c) on or after July 11, 2000 until October 1, 2001; (d) for purposes other than the initial construction or acquisition of those residences; (e) where the person either (i) received a document in the form represented by Exhibit A (attached) or (ii) signed a document in the form represented by Exhibit B (attached) at the closing.

The Court defers ruling on the motion to certify a separate Massachusetts class or subclass with Michael and Lisa Phillips as class representatives until after further discovery. Any motion to certify a separate

Massachusetts class or subclass shall be filed by April 1, 2005.